174 F.3d 437
 137 Lab.Cas. P 33,838, 5 Wage & Hour Cas.2d
(BNA) 330
 Susan KENDALL; Barry Bailey; Keith Bailey; Linda Barnes;
Joe Barnes; Andy Bridges; Eric Brown; George Bryan;
Tammy Buchanan; Gary Burke; Kathleen Clark; John Coleman;
Lake Critzer; Robin Dennis; Dominador Fermil; John
Fusco; Paul Gorski; Thomas Green; Stan Glaser; Joseph
Hoefling; Doug Markley; Pam Martin; Dennis McGee; Mary
Morton; Larry Myers; Michelle Osborn; Robert Pugh;
Kimberly Rabeau; Richard Ramsey; Todd Renigar; David
Rose; Anthony Stewart; Charles Walker; Nancy Walley;
Brenda Watt; Gilbert Williams, and Others Similarly
Situated, Plaintiffs-Appellants,
v.
CITY OF CHESAPEAKE, VIRGINIA, Defendant-Appellee.
Susan Kendall; Barry Bailey; Keith Bailey; Linda Barnes;
Joe Barnes; Andy Bridges; Eric Brown; George Bryan;
Tammy Buchanan; Gary Burke; Kathleen Clark; John Coleman;
Lake Critzer; Robin Dennis; Dominador Fermil; John
Fusco; Paul Gorski; Thomas Green; Stan Glaser; Joseph
Hoefling; David Hildman; William Johnson; Terry King;
Kevin Laughlin; David Long; Doug Markley; Pam Martin;
Dennis McGee; Mary Morton; Larry Myers; Michelle Osborn;
Robert Pugh; Kimberly Rabeau; Richard Ramsey; Todd
Renigar; David Rose; Anthony Stewart; Charles Walker;
Nancy Walley; Brenda Watt; Gilbert Williams, and Others
Similarly Situated, Plaintiffs-Appellees,
v.
City of Chesapeake, Defendant-Appellant.
 Nos. 98-1301, 98-1361.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1999.
Decided April 8, 1999.
 
 ARGUED: Andrew Michael Sacks, Sacks & Sacks, Norfolk, Virginia, for Appellants. Thomas Jeffrey Salb, Breeden, McMillan & Green, P.L.C., Norfolk, Virginia, for Appellee. ON BRIEF: David M. Peters, Breeden, McMillan & Green, P.L.C., Norfolk, Virginia, for Appellee.
 Before WILKINS, MOTZ, and KING, Circuit Judges.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge:
 
 
 1
 The question raised in this case, which appears to be one of first impression, is whether plaintiffs can use 42 U.S.C.A. § 1983 (West Supp.1998) to enforce their rights to overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-62 (1998). We hold that the elaborate remedial scheme provided in the FLSA demonstrates a congressional intent to prohibit § 1983 actions to enforce such FLSA rights.
 
 I.
 
 2
 In 1995, the Department of Labor investigated the City of Chesapeake's alleged failure to pay overtime wages to its emergency medical services (EMS) employees in violation of the FLSA. On August 25, 1995, the City agreed to pay back wages to its EMS employees for the period from September 1, 1993 to August 31, 1995, and the employees, in turn, accepted the payment.
 
 
 3
 The FLSA expressly recognizes and encourages such settlements:
 
 
 4
 The Secretary is authorized to supervise the payment of the unpaid minimum wages or unpaid overtime compensation owing to any employee or employees under ... this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have ... to such unpaid minimum wages or unpaid overtime wages and an additional equal amount as liquidated damages.
 
 
 5
 29 U.S.C.A. § 216(c) (1998). Consistent with this provision, upon acceptance of the settlement payments, the EMS workers signed a release containing the following language:
 
 
 6
 Your acceptance of back wages under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of the Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.
 
 
 7
 Two years later, in August 1997, some of the EMS workers filed a two-count complaint against the City. Both counts allege that the City fraudulently induced the workers to accept the payments and sign the releases by concealing the full extent of its liability to them under the FLSA. In particular, the workers assert that the City concealed its liability "not only for back overtime wrongfully withheld, but for liquidated damages ... routinely awarded under the FLSA as well as overtime for a variety of activities which the CITY had heretofore not even considered as compensable hours worked."
 
 
 8
 The first count of the complaint alleges that the City's fraudulent conduct violates 42 U.S.C.A. § 1983, which provides a remedy for deprivations of rights "secured by the Constitution and laws" of the United States by any one acting under color of state law. The workers maintain that the City, acting under color of state law, acted "to disregard, dishonor, and defeat" their rights under the FLSA. The second count of the complaint alleges that the City's assertedly fraudulent conduct entitles the workers to relief under state tort law.
 
 
 9
 The City moved to dismiss for failure to state a claim or, in the alternative, for summary judgment. In a well-reasoned opinion, the district court granted the motion to dismiss with respect to the § 1983 claim, holding that the comprehensive statutory scheme established by the FLSA precludes workers from using § 1983 to secure their FLSA rights. The court further concluded that because it had dismissed the workers' only federal cause of action, it lacked supplemental jurisdiction over their state law claim. The court accordingly dismissed the state law claim without prejudice and, with no claims left before it, found the City's motion for summary judgment to be moot.
 
 
 10
 The EMS workers now appeal the district court's dismissal of their § 1983 claim, and the City attempts to cross-appeal the court's refusal to grant it summary judgment on the state law claim.
 
 II.
 
 11
 Section 1983 itself creates no rights; rather it provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citation omitted). Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right preserved by another federal law or by the Constitution. See Baker v. McCollan, 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Even if a plaintiff asserts the violation of a federal right, however, it can bring an action pursuant to § 1983 only if Congress has not foreclosed recourse to that statute. See Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 1359-60, 137 L.Ed.2d 569 (1997). Because " § 1983 is a statutory remedy ... Congress retains the authority to repeal it or replace it with an alternative remedy. The crucial consideration is what Congress intended." Smith v. Robinson, 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Congress can manifest its intent to preclude use of § 1983 either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing, 117 S.Ct. at 1359-60.
 
 
 12
 The parties in this case do not dispute that the FLSA's minimum wage and overtime provisions create enforceable federal rights. See 29 U.S.C.A. §§ 206, 207, 216, 217 (1998). Whether alleged deprivation of those rights forms the basis of the workers' claim here is less certain. The complaint alleges that the City's acts "were tantamount to a policy, practice, custom or usage on the part of the CITY ... to dishonor and defeat " their FLSA rights, that they "possess an independent right under § 1983 to be free from such deprivations of federally protected statutory rights," and that the City attempted to violate their rights under federal law "as articulated under the FLSA and as specifically secured under 42 U.S.C. § 1983." (Emphasis added.) The workers' brief is similarly ambiguous, stating that
 
 
 13
 [p]laintiffs do not seek to duplicate their FLSA claims which were available under the FLSA, but merely bring them under § 1983. Rather, plaintiffs complain of an independent § 1983 violation which was perpetrated by the defendant City, to-wit, the knowing, intentional, and willful effort to extinguish and defeat the plaintiffs' substantive rights under the FLSA through a pattern, practice, custom, or usage of inducing the plaintiffs to give up those rights through fraud and deception.
 
 
 14
 (Emphasis added.) The workers thus suggest that their claim is in some sense independent of the FLSA, while at the same time identifying no source for the right giving rise to their § 1983 claim other than the FLSA.
 
 
 15
 The City argues that the workers' claim is in fact not based on the FLSA, but rather on a right "not to be defrauded." This right does not provide a proper basis for an action under § 1983, the City maintains, because it is secured not by the Constitution or a federal statute, but rather by state law. The workers do not contend that federal law establishes a general right not to be defrauded, whether with respect to the execution of a release of rights or otherwise.[1] Certainly no general federal common law right not to be defrauded exists. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We therefore conclude that insofar as the workers' § 1983 claim depends upon a freestanding federal right not to be defrauded, the district court properly dismissed it.
 
 
 16
 The only other possible federal law foundation for the workers' § 1983 claim is the FLSA itself. As noted above, the parties agree that the FLSA creates enforceable federal rights to a minimum wage and to overtime compensation. Whether those rights cover the allegations made by the workers here is a question we need not resolve,[2] however, because the workers' complaint fails to pass the second test for determining the adequacy of a § 1983 claim. As the district court correctly recognized, the FLSA implicitly precludes the workers' § 1983 claim by creating a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing, 117 S.Ct. at 1360.
 
 
 17
 We recognize that a court should not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." Wright v. City of Roanoke Redevelopment & Housing Auth., 479 U.S. 418, 423-24, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (citation and internal quotation marks omitted). Indeed, where, as here, the party advocating preclusion does not claim that any provision of the statute in question expressly prohibits § 1983 actions, that party "must make the difficult showing that allowing § 1983 actions to go forward would be inconsistent with Congress's carefully tailored scheme." Blessing, 117 S.Ct. at 1362 (citation and internal quotation marks omitted) (emphasis added).
 
 
 18
 As the Supreme Court recently noted in Blessing, it has only found a remedial scheme sufficiently comprehensive to preclude § 1983 actions in two cases. Id. at 1362. In Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court held that the "unusually elaborate enforcement provisions" of the Federal Water Pollution Control Act and Maritime Protection Research and Sanctuaries Act of 1972, which allowed for noncompliance orders, civil suits, and criminal penalties, precluded resort to § 1983. Id. at 13-14, 20, 101 S.Ct. 2615. The Court reasoned that "[w]hen the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Id. at 20, 101 S.Ct. 2615. In reaching its holding that the statutory remedies were comprehensive enough to compel a finding of preclusion in the case before it, the Court emphasized that several statutory provisions authorized private enforcement actions. Id. at 14, 20, 101 S.Ct. 2615.
 
 
 19
 The only other case in which the Court held § 1983 actions to be precluded by a statutory scheme is Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The Smith Court noted that the statute at issue there, the Education of the Handicapped Act (EHA) (now the Individuals with Disabilities Education Act), sought to secure the rights of covered individuals through local administrative procedures and the establishment of a right to federal judicial review. Id. at 1009-11, 104 S.Ct. 3457. The plaintiffs in Smith brought a § 1983 action to assert constitutional claims that the Court found to be virtually identical to their allegedly independent EHA claims. Id. at 1009, 104 S.Ct. 3457. The Court found that to allow a § 1983 action of this kind would "render superfluous most of the detailed procedural protections outlined in the" EHA itself. Id. at 1011, 104 S.Ct. 3457. Because the Court concluded that Congress could not have intended such a result, it held that the EHA's review scheme precluded § 1983 actions to enforce the rights asserted. Id. at 1011-13, 104 S.Ct. 3457.[3]
 
 
 20
 In Wright v. City of Roanoke, by contrast, the Court found that the provisions of the Housing Act and the Brooke Amendment did not preclude use of § 1983 to enforce rights created by those statutes. 479 U.S. at 429, 107 S.Ct. 766. The availability of state administrative remedies alone, the Court stated, "does not ordinarily foreclose resort to § 1983." Id. at 427-28, 107 S.Ct. 766; see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 521-22, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). The Wright Court further pointed out that, in contradistinction to the statute before it, the statutes at issue "[i]n both Sea Clammers and Smith v. Robinson ... themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." Id. at 427, 107 S.Ct. 766; see also Blessing, 117 S.Ct. at 1363 (unlike the statutes at issue in Sea Clammers and Smith, challenged statute "contain [ed] no private remedy--either judicial or administrative--through which aggrieved persons [could] seek redress").
 
 
 21
 Applying these principles and precedents, we can only conclude that the mechanisms established by the FLSA preclude a § 1983 action to enforce FLSA rights. Like the statutes at issue in Sea Clammers, 453 U.S. at 13, 101 S.Ct. 2615, the FLSA provides an "unusually elaborate" enforcement scheme. This scheme includes criminal penalties for willful violators of the minimum wage and overtime provisions; a private right of action permitting employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees, and costs; and authorization for the Secretary of Labor to supervise payment of unpaid compensation due under the Act and to bring actions for compensatory and injunctive relief for violations of the Act's minimum wage and overtime provisions. See 29 U.S.C.A. §§ 206, 207, 215-17. As the Supreme Court did in Sea Clammers, 453 U.S. at 20, 101 S.Ct. 2615, we find it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory" enforcement mechanisms.
 
 
 22
 Most importantly, as noted above, the FLSA itself provides individuals with a private right of action for the enforcement of their FLSA rights. 29 U.S.C.A. § 216(b). The Supreme Court has repeatedly emphasized that the availability of such a remedy strongly suggests a Congressional intent to preclude resort to § 1983. See Wright, 479 U.S. at 427, 107 S.Ct. 766; Sea Clammers, 453 U.S. at 14, 20, 101 S.Ct. 2615; see also Blessing, 117 S.Ct. at 1362-63. The establishment of a private FLSA action provides equally significant evidence of Congress's intent here. Indeed, in the FLSA Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms, for the FLSA mandates that the commencement of an action by the Secretary of Labor terminates an employee's own right of action. Id. at § 216(b). If parallel § 1983 actions were allowed, this provision would become "superfluous." Smith, 468 U.S. at 1011, 104 S.Ct. 3457. Like the plaintiff in Smith, the EMS workers here have cited nothing indicating a Congressional intent to permit a plaintiff to "circumvent" the "carefully tailored" statutory scheme created in the FLSA. Id. at 1012, 104 S.Ct. 3457.
 
 
 23
 Rather, Congress has evinced a clear intent to preclude the use of § 1983 for the protection of overtime compensation rights secured by the FLSA. Accordingly, we affirm the district court's dismissal of the workers' § 1983 claim.
 
 III.
 
 24
 In its cross-appeal, the City contends that the district court erred in refusing to grant its motion for summary judgment on the workers' state law claims. This argument fails for several reasons. First we note that the denial of a summary judgment motion is generally not appealable. See O'Connor v. United States, 956 F.2d 48, 52 (4th Cir.1992). Second, although the district court did express its view that summary judgment on the state claim would be inappropriate, it ultimately did not deny the City's motion on the merits. Rather, the court found that the motion was moot because it had dismissed both counts of the workers' complaint. This holding was plainly correct.
 
 
 25
 The § 1983 claim was the workers' only federal cause of action, and thus dismissal of that claim gave the district court discretion to decline to exercise supplemental jurisdiction over the remaining state law claim. See 28 U.S.C.A. § 1367(c)(3) (1993); Jordahl v. Democratic Party, 122 F.3d 192, 203 (4th Cir.1997). Nothing suggests that the district court abused its discretion in doing so.[4] Furthermore, because the district court disposed of the state law claim on jurisdictional grounds, it properly dismissed it without prejudice. See Costello v. United States, 365 U.S. 265, 284-85, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Leaf v. Supreme Court of Wis., 979 F.2d 589, 595 (7th Cir.1992); Sigmon v. Poe, 564 F.2d 1093, 1096-97 (4th Cir.1977) (ordering dismissal of state claim without prejudice after dismissal of all federal claims despite defendant's request that court of appeals direct dismissal on the merits). Having dismissed the only two claims before it, no live controversy remained upon which the district court could enter judgment, summary or otherwise.
 
 IV.
 
 26
 We hold that the district court committed no error in dismissing the workers' § 1983 claim, that it properly dismissed the state law claim without prejudice, and that it correctly found the City's summary judgment motion to be moot. The judgment of the district court is therefore, in all respects,
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Some federal courts have misleadingly referred to "the federal common law of release." See, e.g., Street v. J.C. Bradford & Co., 886 F.2d 1472, 1481 (6th Cir.1989). In light of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), such comments must be read to refer not to a generally-applicable body of federal common law principles, but rather to federally-crafted common law rules for determining whether releases of particular federal rights secured by specific provisions of federal law can be enforced. We considered the enforceability of a purported release of rights secured by the Age Discrimination in Employment Act (ADEA) in O'Shea v. Commercial Credit Corp., 930 F.2d 358 (4th Cir.1991). In O'Shea, we chose not to adopt the federal common law rule used by some circuits for determining the validity of such a release, but rather to rely upon relevant state law principles. Id. at 361-62. The precise ruling in O'Shea has of course been superseded by the limitations on waivers of ADEA rights that Congress created in the Older Workers Benefit Protection Act. See 29 U.S.C.A. § 626(f) (1999). Be that as it may, we note that courts can resolve interstitial questions of federal law either by formulating a federal common law rule or by adopting existing state law, and that they must choose between these two courses on a statute-by-statute, issue-by-issue basis. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-29, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)
 
 
 [2]
 At oral argument, counsel for the workers indicated his belief that his clients' substantive FLSA rights had been extinguished by the releases that they had signed. In rejecting the workers' § 1983 claim, we take no position on the effectiveness of the releases signed by the workers, or on the effectiveness of FLSA releases in general. We note, however, that the Supreme Court has suggested in the employment discrimination context that a court could only enforce a release of rights pursuant to a settlement if the court determined that "the employee's consent to the settlement was voluntary and knowing." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). We have similarly indicated that a release of rights secured by the Age Discrimination in Employment Act is only valid if it is "both knowing and voluntary." O'Shea, 930 F.2d at 361. Because the workers' claim does not rest directly upon the FLSA and we dispose of their § 1983 claim on other grounds, however, we have no occasion to address the question of whether the releases validly terminated their rights to sue under the FLSA
 
 
 [3]
 We recognize that Congress has legislatively over ruled much, but not all, of the Smith holding. See Sellers v. School Bd. of City of Manassas, 141 F.3d 524, 530 (4th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998); 20 U.S.C.A. § 1415(f) (West Supp.1998). The analysis in Smith as to when a federal statute contains a sufficiently comprehensive scheme to preclude § 1983 action stands, however, as witnessed by the Supreme Court's reference to it in Blessing. See 117 S.Ct. at 1362-63
 
 
 [4]
 The language of the district court's opinion could be read to suggest, however, that a district court lacks the power to retain jurisdiction over state claims after all federal claims have been dismissed. That plainly is not the case; as we have noted, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." Jordahl, 122 F.3d at 203. The import of the district court's language is ultimately irrelevant to this appeal, however, because we review "judgments, not statements in opinions." California v. Rooney, 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987)