Robert W. STONE, Plaintiff,

v.

James McGOWAN, in his official capacity as Commissioner of the New York State Department of Labor, Steven Rose, in his official capacity as Commissioner of the Oswego County Department of Social Services and as Commissioner of the Oswego County Department of Employment and Training, Darrell G. Kehoe as Town Supervisor of the Town of Sandy Creek and Ronald Wood as Town Highway Superintendent of the Town of Sandy Creek, Defendants.

No. 99–CV–1941.

United States District Court, N.D. New York.

March 2, 2004.

Rural Law Center of New York, Inc. (Heidi Siegfried, Esq., of counsel), Albany, NY, for Plaintiff

Eliot Spitzer, Attorney General of the State of New York (Robert A. Siegfried, Esq., Assistant Attorney General, of counsel), Albany, NY, Attorneys for Defendant McGowan.

Kublin Law Firm, P.C. (Rhonda B. Kublin, Esq., of counsel), Manlius, NY, for Defendant Rose.

McCluskey Law Firm (Timothy M. McCluskey, Esq., of counsel), Sandy Creek, NY, for Defendants Kehoe and Wood.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

## I. INTRODUCTION

Plaintiff, a former recipient of public assistance pursuant to New York State Social Services Law, sues under 42 U.S.C. Section 1983 and the federal Fair Labor Standards Act, codified at 29 U.S.C. § 201 et seq. ("FLSA"),[1] alleging that defendants—the Commissioner of the New York State Department of Labor ("DOL"), the Commissioner of the Oswego County Department of Social Services and the Oswego County Department of Employment and Training, and both the Supervisor and Highway Superintendent for the Town of Sandy Creek—have violated his rights under the FLSA. According to plaintiff, DOL has enacted regulations which serve to prevent public assistance recipients from receiving compensation for work completed pursuant to Work Experience Pro-

grams administered by local social services districts. Plaintiff asserts that Oswego County's administration of a Work Experience Program, whereby he performed highway maintenance duties for the Town of Sandy Creek, resulted in failure to compensate him at the prevailing minimum wage for each hour worked. In his complaint, plaintiff sought class certification, a declaratory judgment that defendants violated the FLSA, unpaid compensation as well as liquidated damages pursuant to the FLSA, preliminary and permanent injunctive relief, and attorneys fees. Plaintiff's claim under 42 U.S.C. Section 1983 is lodged only against defendant McGowan in his official capacity as Commissioner of DOL.

This Court previously denied plaintiff's motion for class certification to join other "similarly situated" past and present Work Experience Program participants in this action on the ground that since plaintiff was precluded from asserting a claim under 42 U.S.C. § 1983 against defendant McGowan, his individual claims against the Commissioner of the Oswego County Department of Social Services and those against defendants Kehoe and Wood in the Town of Sandy Creek "predominate over, indeed obliterate, all other issues in this lawsuit, thus destroying the requirements of typicality, commonality and full and fair protection of the proposed class pursuant to Rule 23." Stone v. McGowan, Civil Action No.: 99–CV–1941, slip op. at 8 (N.D.N.Y. August 30, 2000).[2] Presently

---

1. The FLSA makes it unlawful for any employer to deny to any employee the Congressionally determined minimum wage, see 29 U.S.C. § 206, and provides that any employer who does so willfully is subject to fines and/or imprisonment and is liable to the affected employee(s) for unpaid wages and an additional equal amount as liquidated damages along with other legal or equitable relief as deemed appropriate. See 29 U.S.C. § 216(b)

2. Indeed, this Court agreed with the Fourth Circuit in Kendall v. City of Chesapeake, Virginia, 174 F.3d 437, 443 (4th Cir.1999) "that the enforcement mechanisms established by the FLSA preclude a Section 1983 action to enforce FLSA rights." Stone v. McGowan, Civil Action No.: 99–CV–1941, slip op. at 13. The "FLSA provides an 'unusually elaborate' enforcement scheme" including criminal penalties, a private right of action permitting

before the Court are motions to dismiss pursuant to Fed.R.Civ.P. 12 by defendants McGowan and Rose. Plaintiff opposes these motions.

## II. STATUTORY AND REGULATORY BACKGROUND

Pursuant to Article 5 of the New York Social Services Law, New York State provides basic programs which provide cash and vouchers for public assistance to needy individuals and families. Sweeping welfare reform efforts in 1997 led to requirements that public assistance recipients be furnished education, training, employment opportunities, and necessary services in order to secure unsubsidized employment that will assist them in achieving economic independence. *See* N.Y. Soc. Serv. Law § 331(1). In furtherance of this goal, New York's legislature directed local (county) social services districts to establish Work Experience Programs ("WEPs") to include performance of work by public assistance recipients in federal, county, city, village or town offices and agencies. *See* N.Y. Soc. Serv. Law § 336–c. As a condition of continued receipt of public assistance benefits, social service districts may require individuals to participate in WEPs, *see* N.Y. Soc. Serv. Law § 336, unless otherwise exempt based on illness, age, disability or other adverse circumstances. *See* N.Y. Soc. Serv. Law §§ 332 & 332–b.

Under the Welfare Reform Act of 1997, DOL supervises local social services districts in administration of WEPs by establishing rules, regulations and policies for the local districts. *See* N.Y. Labor Law § 21; N.Y. Soc. Serv. Law § 337.[3] Pursuant to the Act, social services districts determine the number of hours a public assistance recipient must work in a WEP and assign individuals to specific work activities. *See* N.Y. Soc. Serv. Law § 336–c. The Act requires social services districts to use the higher of either the federal or state minimum wage rate to compute the maximum hours of participation for welfare recipients' WEP assignments. *See* N.Y. Soc. Serv. Law § 336–c(2)(b).[4] Participants in WEPs do not receive wages nor do hours worked result in increased public assistance benefits; the statute's reference to minimum wage rates is intended merely to limit the number of working hours for public assistance recipients. *See Brukhman v. Giuliani*, 94 N.Y.2d 387, 391, 705 N.Y.S.2d 558, 727 N.E.2d 116 (2000) (recalculation of welfare recipients' claim under pre-amendment prevailing wage rate of Social Service Law

---

employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees and costs." *Id.* (quoting *Kendall,* 174 F.3d at 443). Moreover, the FLSA authorized the Secretary of Labor to "supervise payment of unpaid compensation due under the Act and to bring actions for compensatory and injunctive relief." *Id.* In light thereof, this Court agreed that "Congress evinced a clear intent to preclude the use of Section 1983 for the protection of rights secured by the FLSA." *Id.* at 13–14.

3. DOL enforces compliance with state law and regulations by discontinuing or reducing

benefits and conducting conciliation and/or fair hearings. *See* N.Y. Soc. Serv. Law § 341.

4. The statute provides:

(b) The number of hours a participant in work experience activities authorized pursuant to this section shall be required to work in such assignment shall not exceed a number which equals the amount of public assistance payable with respect to such individual (inclusive of the value of food stamps received by such individual, if any) divided by the higher of (a) the federal minimum wage ... or (b) the state minimum wage; ...

N.Y. Soc. Serv. Law § 336–c (2)(b).

Section 336–c[5] would not affect plaintiffs' monetary benefits, but would result in fewer working hours for participating recipients of public aid).

DOL promulgated rules and regulations providing guidance to social services districts in their administration of public assistance and WEPs. To wit, DOL prescribed:

(a) Social services districts may provide, and may require applicants for and recipients of public assistance to participate in a variety of activities including but not limited to the following:

. . . . .

(4) work experience in the public sector or non-profit sector, (including work associated with refurbishing publicly assisted housing) if sufficient private sector employment is not available as determined by the social services official. The maximum number of hours a recipient or applicant may be required to engage in this activity is limited to the number which equals the amount of assistance payable with respect to the public assistance household of such individual (inclusive of the value of food stamps received by the public assistance household of such individual, if any) divided by the higher of (i) federal minimum wage, or (ii) the State minimum wage. *The limitation of the number of hours of work experience to which a participant may be assigned is a calculation of allowable hours in a work activity and does not mean that such participant is receiving a wage for the performance of such activities. The participant is not working off the grant, but is engaged in work*

*activities as an element of his/her plan to become self-sufficient; . . .*

12 N.Y. Comp.Codes R. & Regs. Title 12, § 1300.9 (emphasis added).

## III. DISCUSSION

### A. *Relevant Legal Standards*

 Defendants McGowan and Rose move to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(6) for failure to state a claim and Fed.R.Civ.P. 12(c) for judgment on the pleadings in their favor. The standard for granting a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings is identical to that of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994); *Ad–Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.*, 835 F.2d 980, 982 (2d Cir.1987)). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* (citation omitted). The court will not dismiss the case "unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Id.*

 When a defendant moves to dismiss for lack of subject matter jurisdiction, however, a different standard is applied. In considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1), federal courts "need not

---

**5.** Before it was amended in 1997, Section 336–c provided that the number of hours a welfare recipient participating in a WEP was required to work was to be calculated based on the higher of the federal minimum wage rate, the state minimum wage rate, or the prevailing wage for persons employed in the same or similar occupations. The amendment repealed reference to the prevailing wage rate.

accept as true contested jurisdictional allegations." *Jarvis v. Cardillo,* Civil Case No. 98–5793, 1999 WL 187205, at * 2 (S.D.N.Y. Apr.5, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir. 1998). As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996).

## B. *Plaintiff's FLSA Claim*

The pinnacle of plaintiff's claim is that the above-referenced DOL regulation, which limits the number of hours a welfare recipient must work in a WEP, but which expressly states that such limitation does not mean that the aid recipient is receiving a wage for work performed, violates the FLSA because it results in circumstances where participants are not compensated for hours worked in excess of benefits received and "divest[s] [the proposed plaintiff class] of their rights to the federal minimum wage." Indeed, plaintiff alleges that he was forced to work an undisclosed number of hours in excess of the value of public benefits he received. He alleges that his attempt to recoup unpaid wages by filing a complaint with the United States Department of Labor was thwarted by defendant McGowan. To wit, plaintiff asserts that when the Assistant District Director of the Employment Standards Administration for the United States Department of Labor investigated his complaint, the Deputy Counsel for DOL informed her that plaintiff was not "employed" by the work experience job site sponsor or the county. Moreover, DOL counsel advised that no wages had been paid to plaintiff during his participation in the WEP nor were any due to him under the FLSA or any other statute or common law provision.

■■■ Defendants McGowan and Rose assert that plaintiff's FLSA claim must be dismissed as a matter of law since WEP participants are not in the employ of the state, the counties nor other involved entities. Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is defined as to "suffer or permit to work." *Id.* at § 203(g). Thus, an employee is an individual who an employer suffers or permits to work. "The definition 'suffer or permit to work' was intended to make the scope of employee coverage under the FLSA very broad." *Johns v. Stewart,* 57 F.3d 1544, 1557 (10th Cir.1995) (citing *United States v. Rosenwasser,* 323 U.S. 360, 362, 363 n. 3, 65 S.Ct. 295, 89 L.Ed. 301 (quoting statement of then Senator Hugo Black that the term "employee" as used in the FLSA "had been given 'the broadest definition that has ever been included in any one act.' ") (citation omitted)).

The Supreme Court has noted, however, that although the FLSA's definition of "employee" is quite broad, "it does have its limits." *Id.* (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985)). "Thus, although some persons are literally 'suffer[ed] or permit[ted] to work,' they do not qualify as 'employees' for purposes of the FLSA." *Id.* (citing *Marshall v. Regis Educ. Corp.,* 666 F.2d 1324, 1328 (10th Cir.1981) (resident-hall assistants did not constitute employees of Regis College for purposes of the FLSA); *Reich v. Parker Fire Protection Dist.,* 992 F.2d 1023, 1026–27 (10th Cir.1993) (persons training to be firefighters did not constitute employees of

fire protection district for purposes of the FLSA); *Dole v. Snell,* 875 F.2d 802, 812 (10th Cir.1989) (independent contractors do not constitute employees for purposes of the FLSA)). Because the definition of "employee" under the FLSA is broad, but not precise, courts apply the Supreme Court's "economic reality" test to determine the scope of employee coverage under the FLSA in particular cases. *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). Under this test, courts focus "upon the circumstances of the whole activity," *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), with the ultimate criterion being the economic reality of the relationship. *See Goldberg,* 366 U.S. at 33, 81 S.Ct. 933.

The notion that WEP participants are not public employees was validated by the New York Court of Appeals' decision in *Brukhman.* There, the Court held that WEP participants are not employees; agencies who utilize them are not employers and participants do not receive a wage such as to trigger state constitutional prevailing wage protections. *See* 94 N.Y.2d at 396, 705 N.Y.S.2d 558, 727 N.E.2d 116. Even more apropos to the case at bar is *Johns* wherein the Tenth Circuit determined that welfare beneficiaries participating in a "workfare" program similar to New York's WEP program were not employees under the FLSA and were thus

not entitled to assert cause of action under said statute's minimum wage provision.[6]

*Brukhman* involved a claim under New York's "prevailing wage" law and not entitlement to the minimum wage pursuant to the FLSA. The court clearly excluded welfare recipients from the definition of "employee" as that term relates to statutes governing wages:

[WEP] participants simply are not "in the employ of" anyone—that is the very reason they are receiving welfare benefits and required to participate in the Program, until they can find or be placed in jobs with the customary array of traditional indicia of employment. The Program's policy and procedures manual directs that "participants are expected to seek paid employment." Participants are "assigned" (Social Services Law § 336–a) to various "work site[s]" (Social Services Law § 336–c), where they provide "valuable service" until they are able "to secure employment in the regular economy" (see, [WEP] Program Manual). While the agencies providing work assignment opportunities obviously employ some people, they are not "employing" Program participants (see, *Social Investigator Eligibles Assn. v. Taylor,* 268 N.Y. 233, 236–237, 197 N.E. 262 (1935) [work relief participants are not subject to the Civil Service Law]). These agencies and entities simply do not pay a salary to the Program participants—one of the funda-

<hr>

**6.** Applying the "economic reality" criteria to the facts in *Johns,* the court opined that "although [workfare] participants may perform the same functions as regular employees at some of the projects to which they are assigned, they differ from state employees in that they do not receive the same salary, safe working conditions, job security, career development, Social Security, pension rights, collective bargaining, or grievance procedures as do the actual employees." 57 F.3d at 1558

(quoting *Klaips v. Bergland,* 715 F.2d 477, 483 (10th Cir.1983)); *see also Brouwer v. Metro. Dade County,* 139 F.3d 817, 819 (11th Cir. 1998) (using similar considerations such as lack of application by plaintiff for employment, lack of sick or annual leave, no job security, no Social Security or pension benefits to conclude no "indicia of an employment relationship" existed between state court jurors and Dade County and thus plaintiff was not entitled to minimum wage under FLSA).

mental requisites that sparks the prevailing wage entitlement.

*Brukhman,* 94 N.Y.2d at 395–396, 705 N.Y.S.2d 558, 727 N.E.2d 116. This Court finds that the holding of *Johns* on the very issue of the FLSA's application to "workfare" programs is both relevant and persuasive.

Plaintiff argues herein that *Johns* is either distinguishable from his case or wrong because the decision was rendered prior to the "Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ('PRWORA')," otherwise known as the "Federal Welfare Reform Act," Pub. Law No. 104–193, 110 Stat. 2105 (1996). PRWORA replaced the "Aid to Families with Dependent Children ('AFDC')" program with the "Temporary Assistance to Needy Families ('TANF')" program, codified at 42 U.S.C. § 601 *et seq.*. Plaintiff points out that TANF "focuses on assisting participants in gaining work experience and appreciating the value and dignity of work."

The statute's emphasis on providing work experience, however, does not alter the nature of state "workfare" programs as "benefit" programs. Indeed, citing agency commentary, defendant McGowan points out that the Department of Health and Human Services ("HHS"), the federal agency responsible for implementation and interpretation of the Federal Welfare Reform Act, does not consider payments to workfare beneficiaries under the TANF program to be wages:

> Our definition of assistance distinguishes between work subsidies paid to employers and community service and work experience on a similar basis. We believe that payments to participants in work experience and community service are closely associated with traditional welfare benefits and are designed primarily to meet basic needs rather than

> as compensation for services performed.... We believe the reference to wage subsidies as cash assistance is to such payments as part of work experience and community service where, as in the tax provisions, welfare law determines the size of the payments and limits the hours of work so that it is, in effect, assistance received indirectly. Thus, we generally include such subsidies in the definition of assistance.... We do not believe that the mere fact that the benefits received by recipients in work experience or community service activities are conditional on work is sufficient to view it as nonassistance. The expectation under TANF is that adult recipients will generally participate in work activities as a condition of receiving TANF.

*Commentary to Rules Implemented Pursuant to the Temporary Assistance for Needy Families Program (TANF),* 64 Fed.Reg. 17720, 17758 (April 12, 1999). Moreover, Section 408(c) of TANF, as amended by section 5001(h) of Pub.L. 105–33, clarifies that penalties against recipients under TANF "shall not be construed to be a reduction in any wage paid to the individual." *Id.* at 17770.

Nevertheless, the Second Circuit Court of Appeals recently reversed and remanded a district court order dismissing a Title VII action on the ground that the WEP participants who claimed employment discrimination were not "employees." *See United States v. City of New York,* 359 F.3d 83 (2d Cir.2004). In *Gonzalez,* the Court specifically cast doubt on the soundness of *Johns* and suggested it would have decided the issue differently. *See* 359 F.3d 83, 93–95. Based thereupon, this Court is constrained to deny defendants' motions to dismiss on the ground that WEP participants are not employees within the meaning of FLSA.

C. *Unavailability of § 1983 to Redress Alleged Unlawful Conduct under FLSA*

█ That defendants may be unable to achieve outright dismissal of plaintiff's FLSA claim on the merits is, however, not dispositive of plaintiff's allegations against defendant McGowan. Plaintiff seeks prospective injunctive relief against McGowan pursuant to 42 U.S.C. Section 1983. Leaving aside the arguments of the parties regarding state officials' Eleventh Amendment immunity from such suits and plaintiff's questionable standing to seek prospective injunctive relief since he is no longer a WEP participant, § 1983 is unavailable to address alleged violations of the FLSA by defendant McGowan.

█ 42 U.S.C. Section 1983 itself creates no rights; rather it provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citation omitted). Thus, to state a claim under Section 1983, a plaintiff must allege the violation of a right preserved by another federal law or by the Constitution. *See Baker v. McCollan,* 443 U.S. 137, 140, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 n. (1979). However, because "Section 1983 is a statutory remedy ... Congress retains the authority to repeal it or replace it with an alternative remedy. The crucial consideration is what Congress intended." *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Congress can manifest its intent to preclude use of Section 1983 either expressly "or impliedly by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

█ Of course, a court should not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right," *see Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423–24, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (citation and internal quotation marks omitted), and the party advocating preclusion "must make the difficult showing that allowing § 1983 actions to go forward would be inconsistent with Congress's carefully tailored scheme." *Blessing,* 520 U.S. at 346, 117 S.Ct. 1353 (citation and internal quotation marks omitted).

Applying these principles and precedents, the Fourth Circuit recently concluded that the enforcement mechanisms established by the FLSA preclude a Section 1983 action to enforce FLSA rights. *See Kendall v. City of Chesapeake, Virginia,* 174 F.3d 437, 443 (4th Cir.1999). There, the court held that like the statutes at issue in *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 13–14, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (*"Sea Clammers"*), the FLSA provides an "unusually elaborate" enforcement scheme. This scheme:

> [I]ncludes criminal penalties for willful violation of the minimum wage and overtime provisions; a private right of action permitting employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees and costs, and [finally,] authorization for the Secretary of Labor to supervise payment of unpaid compensation due under the Act and to bring actions for compensatory and injunctive relief ....

174 F.3d at 443. In light of these extensive provisions, the court found it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific enforcement mecha-

88

nisms." *Id.* (quoting *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. 2615.)

While the Court is not bound by the Fourth Circuit's decision, it agrees with and adopts the persuasive and sound reasoning of *Kendall* in concluding that Congress evinced a clear intent to preclude the use of Section 1983 for the protection of rights secured by the FLSA. *See* 174 F.3d at 443. Plaintiff argues that his right to redress defendant McGowan's conduct pursuant to Section 1983 must exist "because the FLSA is not comprehensive enough to reach the state's illegal behavior [based on *Seminole*]," but offers only speculation regarding the truth of this assertion. Short of providing evidence demonstrating that the Secretary of Labor is precluded from seeking redress of New York's alleged unlawful infringement of plaintiff's rights under the FLSA, the Court concludes that plaintiff may not maintain the present action against defendant McGowan.

## IV. CONCLUSION

Based upon the foregoing, it is hereby

ORDERED that defendant McGowan's motion to dismiss plaintiff's complaint is GRANTED; and it is further

ORDERED that defendant Rose's motion to dismiss plaintiff's complaint is DENIED.

IT IS SO ORDERED.