OPINION OF THE COURT
 

 Bellacosa, J.
 

 This case presents the question whether the prevailing wage provision of the New York State Constitution (art I, § 17) applies to public assistance beneficiaries who are statutorily required to participate in a Work Experience Program (Program) as a condition of continued receipt of monetary grants.
 

 The Social Services Law in effect at the commencement of this suit (§ 336-c) directed the computation of Program
 
 *391
 
 participation hours for the various work assignments and experiences, based on the greater of the Federal minimum wage or the typically higher prevailing wage. Plaintiffs claim that allowing the computation with the minimum wage rate violates, on a facial basis, the constitutional prevailing wage protection, as well as equal protection guarantees.
 

 This Court concludes that the constitutional prevailing wage provision, as invoked in and limited to this challenge, does not extend to these public assistance recipients; the statutory computational system, thus, passes facial muster. Because there is no constitutional infirmity, the order of the Appellate Division should be affirmed.
 

 L
 

 Plaintiffs are public assistance recipients required by the New York City Department of Social Services, under welfare reform legislation, to participate in a Work Experience Program. These recipients of Aid to Dependent Children and Home Relief (now known as Family Assistance and Safety Net Assistance) were given work assignments as a condition of continued receipt of their public assistance grants. The assignments were to various not-for-profit organizations and New York City agencies, including the Department of General Services, Department of Parks, Office of Employment Services, Department of Sanitation, and Department for the Aging. Assigned tasks ranged from skilled electrical and painting work to office clerical functions.
 

 The City calculated the required hours of participation by dividing the amount of benefits received by the Federal minimum wage set at $4.75 per hour. Plaintiffs seek judicial relief that would require the City to refigure the calculations based on the pertinent prevailing wage rate, which is typically higher than the Federal minimum wage rate. Utilization of the higher wage rate in their proffered calculation would not affect the amount of monetary benefits; rather, it would result in fewer working hours for participating recipients of aid.
 

 At the time plaintiffs sued, Social Services Law § 336-c provided:
 

 “A recipient may be assigned to participate in such work experience program only if: * * * (b) the number of hours that any such person may be required to work in any month does not exceed a number which equals the amount of assistance pay
 
 *392
 
 able * * * divided by the higher of (1) the federal minimum wage, or (2) the state minimum wage, or (3) the rate of pay for persons employed in the same or similar occupations by the same employer at the same or equivalent site.”
 

 The relief plaintiffs sought included: (1) a declaration that the calculations were performed improperly in violation of their constitutional rights; (2) class certification; (3) enjoinment of defendants from assigning public assistance recipients to work in the Program until there was a determination of the prevailing wage rate for comparable work and use of that rate to calculate the number of participation hours required; and (4) back pay for recipients who worked excess hours because the participation hours were calculated using the Federal minimum wage rate, rather than the prevailing wage rate. The City and State Departments of Social Services cross-moved to dismiss the lawsuit, and opposed all the interim and ultimate relief demanded by plaintiffs.
 

 Supreme Court granted class certification and a preliminary injunction. It also granted intervention to add to the class and dismissed the cross-motions. The court determined that plaintiffs were likely to succeed on the merits pursuant to the State Constitution, article I, § 17 and Social Services Law §§ 164 and 336-c. Subsequently, the Legislature repealed Social Services Law § 164 and amended section 336-c to provide that the number of required hours would be calculated by dividing the amount of benefits received with the higher of the State or Federal minimum wage. The amendment made no reference to the prevailing wage standard.
 

 The Appellate Division reversed and dismissed the complaint. The Court stated:
 

 “plaintiffs cannot claim the benefit of New York State Constitution article I (§ 17), which extends prevailing wage protection only to employees of contractors and subcontractors performing public work, categories into which plaintiffs clearly do not fit * * * Nor is there any merit to plaintiffs’ equal-protection claim, insofar as there is a rational distinction * * * between qualifying public employees selected from civil service lists or by provisional hiring, and WEP participants selected solely, and temporarily, to help them enter the work place”
 
 (Brukhman v Giuliani,
 
 253 AD2d 653, 654-655 [citations omitted]).
 

 
 *393
 
 We denied plaintiffs’ motion for leave to appeal to this Court on the ground that an appeal lies as of right (CPLR 5601 [b] [2]). This is that appeal.
 

 IL
 

 New York State Constitution, article I, § 17, declares:
 

 “Labor of human beings is not a commodity nor an article of commerce and shall never be so considered or construed.
 

 “No laborer, workman or mechanic, in the employ of a contractor or subcontractor engaged in the performance of any public work * * * shall * * * be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used.
 

 “Employees shall have the right to organize and to bargain collectively through representatives of their own choosing.”
 

 The general thrust of plaintiffs’ argument (supported by
 
 amici
 
 curiae) is that the term “public work,” as it is used in the State Constitution, should be given an elastic interpretation, and that courts have already done so. Defendants counter-contend that the important prevailing wage provision is limited in scope, and has no application in these circumstances.
 

 This Court is persuaded that plaintiffs are not “in the employ of’ anyone, within the intendment of New York Constitution, article I, § 17. Further, the City agencies and not-for-profit organizations to which plaintiffs were assigned are not “contractors or subcontractors” within the meaning of the constitutional provision. Lastly, plaintiffs were not engaged in “public work” within the envisioned scope of that constitutional term of art.
 

 The Record of the 1938 Constitutional Convention of the State of New York is replete with references that limit the breadth of the prevailing wage provision. To be sure, the protection of a prevailing wage for “public works contracts” represented “one of the major achievements of organized labor which it desires reduced to a constitutional guarantee,” as well as “the public policy of this State” (3 Revised Record of New York State Constitutional Convention of 1938, at 2203-2204). Indeed, the prevailing wage rate protection was proposed as a constitu
 
 *394
 
 tional overlay so that this policy “may be manifest to labor and industry as a principle of state” (3 Revised Record of New York State Constitutional Convention of 1938, at 2204).
 

 The persons covered by the prevailing wage protection were, as the State Constitution would expressly provide, solely those “in the employ of’ others — the provision “applies entirely to
 
 employees
 
 of contractors and subcontractors engaged in the performance of public work * * *
 
 those who are
 
 working,
 
 employees on public works”
 
 (3 Revised Record of New York State Constitutional Convention, at 2247 [emphasis added]). The choice of the specific term “employees” in section 17, as contrasted to the more general term “laborers,” came after “serious consideration” by the convention delegates because any other term “might be misconstrued by the courts in interpreting that article”
 
 (see, id.,
 
 at 2244). This significant word selection must be given respect and effect.
 

 Additionally, workers protected in this special way are those in the employ of “contractors or subcontractors” who are also engaged in the performance of “public work” (NY Const, art I, § 17). There is a manifest reason for this set of prerequisites: the private employer-contractors actually pay the prevailing wage to the employees, not some municipal entity that may ultimately own or acquire the “public work.” The record of the debate on this point repeatedly acknowledges this important distinction:
 
 “the contractor
 
 * * *
 
 can pay
 
 the prevailing rate of that town to
 
 the men who are working for him”
 
 (3 Revised Record, at 2229 [emphasis added]); “let us see how that prevailing rate of wage law * * * actually works out in the City of New York * * * [The City Comptroller] goes to the
 
 employers',
 
 he tries to find out
 
 what they are paying” (id.,
 
 at 2232 [emphasis added]); “as a practical question how long [could] any manufacturer,
 
 any man in business
 
 * * * maintain an organization, jumping
 
 his rate of wages” (id.,
 
 at 2226 [emphasis added]).
 

 Further, the expectations of “public work” reflected .in the debate record are specifically and intentionally related to construction projects, rather than general services:
 
 “constructing
 
 a public building in the State of New York”
 
 (id.,
 
 at 2221 [emphasis added]); “supposing you are
 
 building a building” (id.,
 
 at 2223 [emphasis added]);
 
 “erecting an office building
 
 in the City of New York”
 
 (id.,
 
 at 2225 [emphasis added]). Significantly, the Record states: “I respectfully suggest that you will still have a fair adequate provision if you limit it to * * * the prevailing wage in connection with the
 
 direct construction
 
 of your public works or your public buildings. That is
 
 *395
 
 going to get
 
 all your construction work, all your building construction; it is going to get all your highway construction;
 
 but you are not going to * * * go to the extreme * * * [which] is not practical”
 
 (id.,
 
 at 2222 [emphasis added]).
 

 IIL
 

 Plaintiffs would displace this cogent documentation and would replace it with a sweeping recategorization placing them within the constitutionally protected class of “employees.” Their theory fails in light of plain reading, interpretive history and guiding precedent, which together confirm the limited boundaries of the constitutional provision at issue
 
 (see,
 
 3 Revised Record of New York State Constitutional Convention of 1938, at 2203-2204;
 
 see also, Matter of Corrigan v Joseph,
 
 304 NY 172,
 
 cert denied sub nom. Remelius v Joseph,
 
 345 US 924;
 
 Varsity Tr. v Saporita,
 
 71 AD2d 643,
 
 affd
 
 48 NY2d 767;
 
 see also, Matter of Social Investigator Eligibles Assn. v Taylor,
 
 268 NY 233;
 
 Pinkwater v Joseph,
 
 275 App Div 757,
 
 affd without opn
 
 300 NY 729).
 

 Corrigan
 
 involved graded-position employees of the Board of Transportation of the City of New York. They maintained and repaired subway and railway lines and sought the prevailing wage rate. This Court analyzed their request in light of article I, § 17 and found that they were not in the employ of a contractor or subcontractor within the “definitely limited” scope of the constitutional provision
 
 (Matter of Corrigan v Joseph, supra,
 
 at 179).
 

 Plaintiffs, nevertheless, urge that they be considered “in the employ of’ the various agencies to which they were assigned. Yet, even if they were so “employed,” they would still not be entitled to prevailing wage protection because a department of a municipality — even though it may enter into agreements with the municipality to provide Program positions — does not qualify as a “contractor or subcontractor” within the meaning of the constitutional provision
 
 (see, Matter of Corrigan v Joseph,
 
 supra;
 
 compare, Matter of Twin State CCS Corp. v Roberts,
 
 72 NY2d 897). Similarly, the other entities cooperating with the Work Experience referrals do not fall within the classification of construction and organized labor-related contractors contemplated throughout the Constitutional Convention debate. Plaintiffs’ cited authorities do not come close to supporting the far-reaching proposition they urge in these regards.
 

 As noted earlier in this opinion, Program participants simply are not “in the employ of’ anyone — that is the very reason they
 
 *396
 
 are receiving welfare benefits and required to participate in the Program, until they can find or be placed in jobs with the customary array of traditional indicia of employment. The Program’s policy and procedures manual directs that “participants are expected to seek paid employment.” Participants are “assigned” (Social Services Law § 336-a) to various “work site[s]” (Social Services Law § 336-c), where they provide “valuable service” until they are able “to secure employment in the regular economy”
 
 (see,
 
 Program Manual). While the agencies providing work assignment opportunities obviously employ some people, they are not “employing” Program participants
 
 (see, Social Investigator Eligibles Assn. v Taylor, supra,
 
 at 236-237 [work relief participants are not subject to the Civil Service Law]). These agencies and entities simply do not pay a salary to the Program participants — one of the fundamental requisites that sparks the prevailing wage entitlement.
 

 Further, contrary to plaintiffs’ argument, we have defined “public work” narrowly:
 

 “It is hornbook law that the Labor Law provision applies only to workers involved in the construction, replacement, maintenance and repair of ‘public works’ in a legally restricted sense of that term * * * [s]ection 17 of article I of the State Constitution extends the protection of section 220 of the Labor Law * * * but was not intended to broaden the definition of ‘public works’ ”
 
 (Varsity Tr. v Saporita,
 
 71 AD2d 643, 644 [citation omitted],
 
 affd
 
 48 NY2d 767,
 
 supra; see also, Pinkwater v Joseph,
 
 275 App Div 757,
 
 affd without opn
 
 300 NY 729,
 
 supra; cf., Matter of Twin State CCS Corp. v Roberts,
 
 72 NY2d 897,
 
 supra).
 

 Since plaintiffs do not meet the other requisites of this constitutional entitlement, we need not parse these facial claims to determine whether some might be deemed to squeeze into the “public work” column. That feature could not, in any event, change the essential analysis here and the well-founded result in favor of the City’s legal position.
 

 There is not now, nor with the prior statutory version was there previously, anything constitutionally infirm about the pertinent Social Services Law provisions. The State Constitution neither prescribes nor contemplates the prevailing wage rate in the calculation of Program participation hours. Indeed, the relief sought by this lawsuit — fewer working hours — is not
 
 *397
 
 what the important prevailing wage protection is designed to address. That provision is New York’s proud enforcement of the value of work and the dignity of earned wages.
 

 The narrowness of the prevailing wage protection is certainly not a disparagement of the value or efforts of laborers generally who do not perform “public work” for qualifying contractors. Neither the constitutional history nor our interpretation of the provision as pertinent to this controversy carry such a negative implication. Rather, the precise focus represents an enacted policy limitation necessary to gain adoption of the salutary proposal; without the precision, as the debate transcript cogently demonstrates, the provision might have failed or fizzled altogether. It is not the judicial role to recalibrate this careful decision and substitute even a worthwhile or different policy preference.
 

 In sum, plaintiffs received money grants, pursuant to the statutory public assistance regimen. Had plaintiffs complained about their assignments on legal grounds, administrative and judicial review on an individualized, fair hearing basis might have been available
 
 (see,
 
 Social Services Law § 341;
 
 see also, Matter of Church v Wing,
 
 229 AD2d 1019). That is not what, happened here. This case seeks a preemptive facial remedy based on constitutional grounds; that approach is neither appropriate nor available here. Notably, however, we decide no more than is before us and leave other facets and potential challenges to the statutory reform measure for some other day and another case, should one be undertaken.
 

 We have considered all other arguments and requests for relief, and conclude none is persuasive.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, without costs.