[926 NYS2d 559]

In the Matter of Walter E. Carver, Appellant, v State of New York et al., Respondents.

Second Department, June 21, 2011

### APPEARANCES OF COUNSEL

*Richard D. Lamborn*, Bronx, for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Benjamin Gutman* and *Sudarsana Srinivasan* of counsel), for respondents.

### OPINION OF THE COURT

LOTT, J.

In this proceeding pursuant to CPLR article 78, the petitioner, a former recipient of public assistance, contends that he is entitled to the wage protections of the New York State Minimum Wage Act (Labor Law art 19) and the Federal Fair Labor Standards Act (29 USC § 201 *et seq.*) for the time he spent performing work activities that were a necessary condition of his receipt of public assistance benefits. We conclude that, although the petitioner is not entitled to the wage protections of the New York State Minimum Wage Act, he is entitled to the wage protections of the Federal Fair Labor Standards Act.

### Factual and Procedural Background

The petitioner received public assistance benefits from the New York State Office of Temporary and Disability Assistance (hereinafter the OTDA) from 1993 until March 2000. As a condition of receiving those benefits, the petitioner was required to participate in New York City's Work Experience Program (hereinafter WEP) (*see* Social Services Law § 336 [1] [d]). According to the petitioner, as a participant in the program, he was assigned to work for the City of New York at Coney Island Hospital, where he sorted and delivered mail, and at the Staten Island Ferry Terminal, where he swept floors, picked up trash, and threw down salt in the winter. The petitioner asserted that, as a WEP participant, he was required by the OTDA to work 35 hours per week. According to the petitioner, in exchange for his work, he was paid $176 every two weeks, and he also received food stamps.

On or about August 10, 2007, the petitioner won $10,000 in the New York State Lottery. In a notice dated September 10, 2007, the OTDA informed the petitioner that it would intercept one half of his prize money ($5,000) pursuant to Social Services

Law § 131-r[1] and Tax Law § 1613-b,[2] as reimbursement for the public assistance benefits he received from September 5, 1997, through March 4, 2000. In a letter dated September 27, 2007, the petitioner requested a review of the OTDA's determination. On January 8, 2008, the OTDA, upon reviewing its determination, notified the petitioner that it would not refund any of the intercepted money.

The petitioner then commenced this proceeding pursuant to CPLR article 78, inter alia, to annul the OTDA's determination withholding his lottery winnings. In his fourth and fifth causes of action, the petitioner alleged that the interception of his lottery winnings was in derogation of his rights under the Federal Fair Labor Standards Act (hereinafter the FLSA) (see 29 USC § 206) and the New York State Minimum Wage Act (see Labor Law § 652). Specifically, the petitioner contended that the OTDA required him to work 35 hours per week in order to receive public assistance benefits, and that his biweekly benefits, plus the value of food stamps he received, equaled no more than the federal or New York State minimum wage. Thus, the petitioner contended that requiring him to repay these benefits through the interception of his lottery winnings resulted in him having worked for wages far below the federal and state minimum wage. The respondents cross-moved, inter alia, to dismiss the petition pursuant to CPLR 3211 (a) (7). The Supreme Court granted the cross motion and dismissed the proceeding. The petitioner appeals from so much of the Supreme Court's order and judgment as granted that branch of the respondents' cross motion which was pursuant to CPLR 3211 (a) (7) to dismiss the petition insofar as asserted against the OTDA and its Commissioner and dismissed the petition insofar as asserted against

---

1. Social Services Law § 131-r (1) provides, in part:
 "Any person who is receiving or has received, within the previous ten years, public assistance pursuant to the provisions of this article, and who wins a lottery prize of six hundred dollars or more shall reimburse the [OTDA] the winnings, for all such public assistance benefits paid to such person during the previous ten years; provided, however, that such crediting to the [OTDA] shall in no event exceed fifty percent of the amount of the lottery prize. The commissioner shall enter into an agreement with the director of the lottery, pursuant to section sixteen hundred thirteen-b of the tax law, for the crediting of lottery prizes against public assistance benefits."

2. Tax Law § 1613-b (1) provides that the Director of the Lottery shall enter into an agreement with the Commissioner of the OTDA, which agreement shall set forth the procedures for the crediting of lottery prizes against public assistance benefits.

those respondents. We modify the order and judgment and reinstate the petitioner's fourth cause of action alleging a violation of the FLSA insofar as asserted against the OTDA and its Commissioner.

## New York State Minimum Wage Act

■ The New York State Minimum Wage Act provides that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" the amount set forth in the statute (Labor Law § 652 [1]). However, Labor Law § 651 (5) (n) provides that "any individual who is employed or permitted to work . . . by a federal, state or municipal government or political subdivision thereof" is not an "employee" for the purposes of the New York State Minimum Wage Act (*see Matter of Faculty Student Assn. of State Univ. of Oneonta v Ross*, 54 NY2d 460, 463 [1981]). As the petitioner was employed or permitted to work by the City of New York, a municipal government, he clearly is not an "employee" within the meaning of the New York State Minimum Wage Law. Accordingly, the Supreme Court properly granted that branch of the respondents' motion which was to dismiss the fifth cause of action alleging a violation of the New York State Minimum Wage Act.

## The FLSA

The FLSA provides: "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the" rates set forth in the statute (29 USC § 206 [a]). An "employee" is defined as "any individual employed by an employer" (29 USC § 203 [e] [1]). To "employ" "includes to suffer or permit to work" (29 USC § 203 [g]). An "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency" (29 USC § 203 [d]).

> "The Supreme Court [of the United States] has emphasized the expansiveness of the FLSA's definition of employer. Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy" (*Herman v RSR Sec. Servs. Ltd.*, 172 F3d 132, 139 [1999] [citation and internal quotation marks omitted]).

"Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case. Under the 'economic reality' test, the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (*id.* [citations omitted]).

"No one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances" (*id.* [citation omitted]).

In *Johns v Stewart* (57 F3d 1544 [1995]), the United States Court of Appeals for the Tenth Circuit held that participants in Utah's workfare program were not "employees" under the FLSA and, thus, that agencies were not required to pay participants a minimum wage, even though the participants were required to perform work in order to receive their benefits. Applying the "economic reality" test, the court concluded that the "overall nature of the relationship between Plaintiffs and Defendants is assistance, not employment" (*id.* at 1558).

In 1996 Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act (hereinafter the PRWORA) (codified in relevant part at 42 USC § 601 *et seq.*). PRWORA provided that, in order for a state to receive federal welfare grants, a certain percentage of the state's welfare recipients must participate in "work activities" (42 USC § 607). PRWORA further provided that the following provisions of law shall apply to any program or activity which receives such funds: (1) the Age Discrimination Act of 1975 (42 USC § 6101 *et seq.*); (2) section 504 of the Rehabilitation Act of 1973 (29 USC § 794); (3) the Americans with Disabilities Act of 1990 (42 USC § 12101 *et seq.*); and (4) title VI of the Civil Rights Act of 1964 (42 USC § 2000d *et seq.*) (*see* 42 USC § 608 [d]). One commentator has stated that the

"conspicuous absence of FLSA and Title VII [of the Civil Rights Act of 1964 from this list] has raised contentious questions about whether and to what

extent rights afforded workers under FLSA and Title VII also apply to workfare participants. Since PRWORA came into effect in 1997, courts have differed on how to reconcile the longstanding broad applications of FLSA and Title VII with their apparent ommission from PRWORA. The unique duality of workfare participants, as both workers and welfare recipients, has not made this question easy" (Burry, Comment, *Civil Rights and the Low-Wage Worker: Testing Economic Reality: FLSA and Title VII Protection for Workfare Participants*, 1 U Chi Legal F 561, 562 [2009]).

In *United States v City of New York* (359 F3d 83 [2004], *cert denied* 543 US 1146 [2005]), the United States Court of Appeals for the Second Circuit (hereinafter the Second Circuit) held that welfare recipients, like the petitioner in this case, who are obligated to participate in New York City's WEP program, are "employees" within the meaning of title VII of the Civil Rights Act of 1964, and, thus, are entitled to title VII's protections against sexual and racial harassment (*id.* at 86). The court reasoned:

> "Defendants tacitly concede, as they must, that plaintiffs' work was completely controlled by the various agencies for which they worked but argue that plaintiffs [were not] 'hired,' because they received no remuneration for their work.

> "We disagree. The plaintiffs allege that they received cash payments and food stamps in return for their work for the city. Those payments equaled the minimum wage times the number of hours the plaintiffs worked. A plaintiff who unjustifiably refused to work would lose the portion of the family's grant attributable to her. Thus, each plaintiff had to work in order to receive her share of the family grant. A functional commonsense assessment of the plaintiffs' alleged relationship with the city results in the conclusion that they were employees.

> "In addition, plaintiffs received other benefits including transportation and child care expenses and eligibility for workers' compensation because of their work. Contrary to the district court's position, these benefits do not flow solely from their status as welfare recipients. The individual plaintiffs must perform useful work to receive any of the benefits. *See* N.Y. Soc. Serv. L. § 336-c (2) (b)" (*id.* at 92).

The *City of New York* court also noted that a Conference Committee report on a 1997 Balanced Budget Act acknowledged that the United States Department of Labor (hereinafter the DOL) had determined that " 'workfare participants may be covered "employees" and thus would be covered by the Fair Labor Standards Act (FLSA), which sets hour and wage standards, and other employment laws,' " and that the Conference Committee had rejected the effort of the House of Representatives to override the DOL's interpretation as part of the 1997 Balanced Budget Act (*United States v City of New York*, 359 F3d at 99, quoting HR Rep 217, 105th Cong, 1st Sess, at 934, reprinted in 1997 US Code Cong & Admin News, at 555). The court stated that the "failure of Congress to act when it had knowledge of DOL's interpretation suggests that DOL's interpretation is correct" (*United States v City of New York*, 359 F3d at 100).

Finally, the *City of New York* court stated that it was not persuaded otherwise by *Johns v Stewart*. It explained:

> "First, *Johns* is not a Title VII case and the workfare program was not governed by PRWORA . . . Second . . . even with respect to the statute *Johns* does construe, the FLSA, the Department of Labor ('DOL'), the agency charged with interpreting the FLSA, has rejected the *Johns* approach. Third, there is no indication in *Johns* that the participants received the full range of benefits received by WEP participants or that they were required to perform useful work. Finally, the *Johns* analysis and most of defendants' arguments rest on an artificial dichotomy: one must be either a welfare recipient or an employee and cannot be both . . . [W]e recognize that a person may be an employee with respect to certain of his duties and not be an employee with respect to others" (*id*. at 94).

Although the Second Circuit in *City of New York* directly held only that WEP participants are employees within the meaning of title VII of the Civil Rights Act of 1964, the passages quoted above strongly suggest that it would also hold that WEP participants are employees within the meaning of the FLSA. As noted by Judge Jacobs in his dissent, "the definition of 'employee' in the FLSA is considerably more inclusive than the common law definition used in Title VII" (*id*. at 108; *see Frankel v Bally, Inc.*, 987 F2d 86, 89 [1993]; *Elwell v Weiss*, 2007 WL

2994308, \*5, 2006 US Dist LEXIS 96934, \*16 [WD NY 2006]). Indeed, in the wake of *City of New York*, two United States District Courts within the Second Circuit have held that WEP participants are employees within the meaning of the FLSA, following the reasoning of *City of New York* (*see Elwell v Weiss*, 2007 WL 2994308, \*5-6, 2006 US Dist LEXIS 96934, \*17-18 [2006]; *Stone v McGowan*, 308 F Supp 2d 79, 86 [ND NY 2004]).

> ■ "When there is neither a decision of the Supreme Court nor uniformity in the decisions of the lower Federal courts . . . a State court required to interpret [a] Federal statute has the same responsibility as the lower Federal courts and is not precluded from exercising its own judgment or bound to follow the decision of the Federal Circuit Court of Appeals within the territorial boundaries of which it sits" (*Flanagan v Prudential-Bache Sec.*, 67 NY2d 500, 506 [1986], *cert denied* 479 US 931 [1986]).

However, we find the reasoning of the Second Circuit to be persuasive, especially in light of the interpretation of the DOL, the agency charged with enforcing the FLSA, which interpretation is not unreasonable or irrational (*see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d 508, 518 [2004]; *Goodwin v Perales*, 88 NY2d 383, 392 [1996]; *Matter of Rodriguez v Perales*, 86 NY2d 361, 367 [1995]). Thus, we conclude that the petitioner was an employee within the meaning of the FLSA.

Contrary to the respondents' contention and the conclusion of the Supreme Court, *Brukhman v Giuliani* (94 NY2d 387 [2000]) does not compel a different result. In *Brukhman*, the Court of Appeals held that WEP participants are not "in the employ" of anyone within the meaning of article I, § 17 of the New York State Constitution. Article I, § 17 of the New York State Constitution provides, inter alia, that laborers, workers, and mechanics "in the employ" of a contractor or subcontractor engaged in the performance of public work must be paid no less than the rate of wages prevailing in the same trade or occupation in the location within the state where such public work is to be situated, erected, or used. In determining whether WEP participants are "in the employ" of anyone within the meaning of article I, § 17 of the New York State Constitution, the *Brukhman* Court did not apply the "expansive[ ]" "economic reality" test used to determine whether a person is an employee within the meaning of the FLSA, a statute that "warrants an expansive

interpretation of its provisions so that they will have the widest possible impact in the national economy" (*Herman v RSR Sec. Servs. Ltd.*, 172 F3d at 139 [internal quotation marks omitted]).

Accordingly, the Supreme Court should have denied that branch of the respondents' cross motion which was to dismiss the fourth cause of action alleging a violation of the FLSA insofar as asserted against the OTDA and Hansell.[3]

The petitioner's remaining contentions are without merit or improperly before us because they were not raised in the petition (*see Matter of Thomas v Straub*, 29 AD3d 595, 596 [2006]; *Matter of Stoves & Stone, Ltd. v Martinez*, 17 AD3d 683, 684 [2005]; *Matter of David v Christian*, 134 AD2d 349, 350 [1987]).

Accordingly, the order and judgment is modified, on the law, by deleting the provisions thereof granting that branch of the respondents' cross motion which was to dismiss the fourth cause of action insofar as asserted against the respondents New York State Office of Temporary and Disability Assistance and David A. Hansell, Commissioner of the New York State Office of Temporary and Disability Assistance, and dismissing that cause of action against those respondents, and substituting therefor a provision denying that branch of the cross motion; as so modified, the order and judgment is affirmed insofar as appealed from, the fourth cause of action is reinstated against those respondents, the matter is remitted to the Supreme Court, Kings County, for further proceedings on that cause of action after the respondents have been permitted to serve and file an answer, and the respondents' time to serve and file an answer

---

3. Although these arguments were not made by the respondents, the Supreme Court also concluded that the fourth cause of action alleging a violation of the FLSA was subject to dismissal because (1) the petitioner was not "engaged in commerce" within the meaning of the FLSA, and (2) inasmuch as the lottery ticket purchased by the petitioner stated that the purchase was subject to all of the rules, regulations, and statutes applicable to that ticket, the petitioner implicitly agreed to the recoupment of his public assistance money. The Supreme Court is incorrect on both counts. First, the OTDA is a "public agency" (29 USC § 203 [x]) and an activity of a "public agency" is specifically included within the FLSA's definition of an "[e]nterprise engaged in commerce" (29 USC § 203 [s] [1] [C]; § 206 [a]; *see Jacobs v New York Foundling Hosp.*, 577 F3d 93, 98 [2009] ["(T)hrough a series of amendments dating back to 1961, Congress broadened the FLSA's scope to extend its coverage to nearly all federal, state, and local government employees"]). Second, "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate" (*Barrentine v Arkansas-Best Freight System, Inc.*, 450 US 728, 740 [1981] [internal quotation marks omitted]).

to the petition is extended until 30 days after service upon them of a copy of this opinion and order.

COVELLO, J.P., DICKERSON and HALL, JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the provisions thereof granting that branch of the respondents' cross motion which was to dismiss the fourth cause of action insofar as asserted against the respondents New York State Office of Temporary and Disability Assistance and David A. Hansell, Commissioner of the New York State Office of Temporary and Disability Assistance, and dismissing that cause of action against those respondents, and substituting therefor a provision denying that branch of the cross motion; as so modified, the order and judgment is affirmed insofar as appealed from, the fourth cause of action is reinstated against those respondents, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on that cause of action after the respondents have been permitted to serve and file an answer; and it is further,

Ordered that the respondents' time to serve and file an answer to the petition is extended until 30 days after service upon them of a copy of this decision and order; and it is further,

Ordered that one bill of costs is awarded to the petitioner payable by the respondents New York State Office of Temporary and Disability Assistance and David A. Hansell, Commissioner of the New York State Office of Temporary and Disability Assistance.