[942 NYS2d 61]

MANUEL DE LA CRUZ et al., Appellants, v CADDELL DRY DOCK & REPAIR CO., INC., et al., Respondents.

First Department, April 12, 2012

### APPEARANCES OF COUNSEL

*Virginia & Ambinder, LLP*, New York City (*James Emmet Murphy, Lloyd R. Ambinder* and *Marc A. Tenenbaum* of counsel), for appellants.

*Blank Rome LLP*, New York City (*Richard V. Singleton II* and *Anthony A. Mingione* of counsel), and *Frank & Associates, P.C.*, Farmingdale (*Peter A. Romero* of counsel), for respondents.

### OPINION OF THE COURT

CATTERSON, J.

In this action arising out of the plaintiffs' claim that they were not paid the required prevailing wage and supplemental benefits under Labor Law § 220, we are constrained by the decision of the Court of Appeals in *Brukhman v Giuliani* (94 NY2d 387 [2000]) to find that the repair of City vessels is not a "public work" within the meaning of the statute. The plaintiffs' claim fails on the ground that *Brukhman* mandates a showing of more than just public purpose or function to determine that a project is a "public work."

The undisputed facts of this case are as follows: Between 1996 and 2006, defendant Caddell Dry Dock & Repair Co. entered into contracts with various municipal corporations of the City of New York—including the Fire Department, the Department of Transportation, and the Department of Sanitation (collectively, the agencies)—to perform dry-docking and repairs on various publicly-owned vessels, such as fire boats, garbage barges, and ferries. Many of the contracts, including the ones relevant to this action, contained provisions calling for

the payment of the prevailing rate of wages and supplemental benefits for work performed on "public works" projects pursuant to Labor Law § 220 (3).

The plaintiffs commenced this action on or about September 25, 2002, on behalf of themselves and a putative class of approximately 750 workers, against Caddell and against American Automobile Insurance Company and American Manufacturers Mutual Insurance Company, Caddell's sureties. In the complaint, plaintiffs alleged that they performed work for Caddell under the "public works" contracts, and that the work included repair and maintenance work. The plaintiffs further alleged that they were not paid the required prevailing rate of wages and supplemental benefits.

On or about December 24, 2002, the defendants moved to dismiss the complaint. The court denied the motion, and directed defendants to file an answer. On or about August 11, 2003, defendants renewed their motion to dismiss the complaint. Upon renewal, the motion court granted the motion to dismiss. In granting the motion, the court determined that the work under the contracts was not "public work" within the meaning of Labor Law § 220 (3).

On appeal, this Court reinstated so much of plaintiffs' complaint as alleged breach of contract against Caddell (the complaint's second cause of action) and joint and several liability against the sureties (the complaint's sixth cause of action) (*De La Cruz v Caddell Dry Dock & Repair Co., Inc.*, 22 AD3d 404 [1st Dept 2005] [hereinafter referred to as *Caddell I*]). However, we stated that the fifth cause of action for willful failure to pay prevailing wages was "properly dismissed" and remanded the matter for further proceedings. (*Id.* at 406.) The parties subsequently cross-moved for summary judgment, with the plaintiffs moving only for partial judgment on liability and the defendants moving for dismissal of the complaint. By order entered May 19, 2010, the motion court denied the plaintiffs' motion and granted the defendants' motion, dismissing the complaint against both Caddell and the sureties. The court found that determination of the motions depended on whether repair work on a vessel constitutes a "public work." The court found, therefore, that the issue was not properly before it as the issue was decided by the original trial court and upheld by the Appellate Division. The plaintiffs appealed.

As a threshold matter, the sole issue to be determined on this appeal is whether the plaintiffs' work, repairing vessels, is "pub-

lic work" since we did not decide this issue when we dismissed the plaintiffs' fifth cause of action in *Caddell I*. Thus, the motion court erred in basing its determination on what it perceived to be the law of the case. However, the court was correct in granting the defendants' motion for summary judgment. We now affirm for the reasons set forth below.

■ The contractual provision regarding the payment of prevailing wages is inapplicable because the work done by employees on vessels owned by City agencies was not "public work" as required by Labor Law § 220 (3). The statute does not define "public work," but, as the defendants correctly assert, precedent mandates that the prevailing wage law is limited to those workers employed in the construction, repair and maintenance work of fixed structures, and does not apply to workers who are servicing a commodity owned by the City.

The plaintiffs' arguments that the work at issue falls within the scope of "public work" rely on case law that purportedly mandates a focus on the "function" or "purpose" of the project. The plaintiffs rely on *Matter of Twin State CCS Corp. v Roberts* (72 NY2d 897 [1988]) and *Matter of Sewer Envtl. Contrs. v Goldin* (98 AD2d 606 [1983]), in support of that proposition. The plaintiffs characterize these cases as "contemporary" case law. However, labeling them as such does not mean there is no well-established precedent that enunciates different determinative factors for "public work." The plaintiffs would have us adopt a principle enunciated in just two cases, namely that "purpose" and/or "function" is the sole focus of a "public work" analysis. However, they ignore the fact that well-settled law mandates more than just an inquiry into the purpose or function of a project. In so doing, the plaintiffs discard the seminal opinion of the Court of Appeals on the issue. (*See Brukhman*, 94 NY2d at 393.)

■ Their view that the *Brukhman* Court's long explication on "public work" is dictum, and therefore not binding on us, is incorrect. The Court stated unequivocally that the plaintiffs in that case, who were engaged in skilled electrical and painting work and office clerical functions in various City agencies, were not engaged in "public work."* (*Id.*) It is true that the Court stated that some of the plaintiffs "might be deemed to squeeze into the 'public work' column," and found it unnecessary to

---

* While that case was brought under article I, § 17 of the New York Constitution rather than Labor Law § 220 (3), the Court explicitly stated that the scope of the definition of "public works" under each provision is the same. (*Brukhman*, 94 NY2d at 396.)

analyze those claims because *those* plaintiffs did not meet the "other requisites of th[e] constitutional entitlement." (*Brukhman,* 94 NY2d at 396.) Nevertheless, its finding as to the overwhelming majority of plaintiffs was based on a very thorough analysis as to what constitutes "public work."

Thus, even were the Court's discussion in *Brukhman* dictum, such well-reasoned dicta may not be discarded as nonbinding. (*See Garofano Constr. Co., Inc. v City of New York,* 180 Misc 539, 540 [App Term, 1st Dept 1943], *affd* 266 App Div 960 [1943] [dictum of the Court of Appeals in *Ewen v Thompson-Starrett Co.* "which was not casual but carefully and thoroughly reasoned, is binding upon this intermediate appellate court . . . Particularly is this so where the statute, as the one here involved, is of such far-reaching public importance"].) Interestingly, the statute at issue in the cited cases, the prevailing wage law, is the very same as the one at issue here. (*See Ewen v Thompson-Starrett Co.,* 208 NY 245 [1913].)

■ Moreover, *Brukhman* affirmed this Court's determination that plaintiffs were not performing public work "regardless whether a public purpose is being served." (*Brukhman v Giuliani,* 253 AD2d 653, 654 [1998].) Indeed, the Court of Appeals was unequivocal as to its consistent "narrow[ ]" definition of what constitutes "public work" (*Brukhman,* 94 NY2d at 396); and it reiterated "hornbook law" to establish that "the Labor Law provision applies only to workers involved in the construction, replacement, maintenance and repair of public works in a legally restricted sense of that term." (*Id.* [internal quotation marks omitted].)

Moreover, the *fixed* nature of "public work" projects is emphasized in the Court's reference to the debate record of the 1938 Constitutional Convention. The Court referenced phrases used in the debate to limit the definition of "public work" to "*constructing* a public building," and "*erecting an office building*" and "*highway construction.*" (94 NY2d at 394-395.) The Court noted that the discussion "specifically and intentionally related to *construction* projects rather than general services." (94 NY2d at 394 [emphasis added].) It further characterized the debate as one "replete with references that *limit* the breadth of the prevailing wage provision." (94 NY2d at 393 [emphasis added].) Finally, it rejected the plaintiffs' urging (as plaintiffs urge in this case) that the term "public work" be given an "elastic" interpretation. The Court characterized this as plaintiffs' attempt at "sweeping recategorization." (*Brukhman,* 94 NY2d at 395.)

A brief look at the "hornbook law" cited by the *Brukhman* Court shows that the emphasis on construction projects and construction-like activity as the defining nature of "public work" reaches back more than a half-century: In 1950, the Court affirmed this Court's dismissal of a proceeding brought by laundry workers in institutions maintained by the City of New York. It was held that section 220 "is confined to such laborers . . . whose services are performed in connection with the construction, replacement, maintenance and repair of public works owned by the City of New York." (*Matter of Pinkwater v Joseph*, 300 NY 729, 730 [1950], *affg* 275 App Div 757 [1st Dept 1949].)

In 1979, the Court of Appeals affirmed the Second Department's determination that school bus drivers and matrons are not workers covered by the statute. (*Varsity Tr. v Saporita*, 48 NY2d 767 [1979], *affg* 71 AD2d 643 [1979].) These determinations were essentially based on Supreme Court's analysis of the Labor Law, and its conclusion that

> "the legislators were interested in protecting that specific portion of the work force which is involved in the construction, replacement, maintenance and repair of public works. It has long been established that this law does not blanket all workers who have some working contact with the city or agency or department . . . Even with the most liberal construction, a bus driver or a matron in charge of children passengers is not a construction worker nor do they replace, maintain or repair public works." (*Varsity Tr.*, 98 Misc 2d 255, 259-260 [Sup Ct, Kings County 1979].)

In 1983, the Court of Appeals affirmed the Fourth Department in rejecting a prevailing wage claim in *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [4th Dept 1983], *affd* 63 NY2d 810 [1984]). This included the Fourth Department's finding that "public works" has a generally accepted plain meaning found in dictionaries, including Black's Law Dictionary, as "fixed works constructed for public use." (94 AD2d at 538 [internal quotation marks omitted].)

Indeed, it is construction or construction-like activity on a fixed structure, rather than a finding of public purpose, that is the essential component of any determination as to a project being a "public work." Even in *Matter of Miele v Joseph* (280 App Div 408 [1952], *affd* 305 NY 667 [1953]), cited for the proposi-

tion that work does not need to be construction work, the Court refers to the "making" of a public sign, not to sign painting or lettering. The Court used the phrase *"making* of signs" throughout, indicating that it was aware it had to shoehorn the task into a construction-like activity. (*Miele*, 280 App Div at 409.) Moreover, the Court emphasized that the work involved fixed public structures, and specifically stated that there was no necessity to differentiate between signs painted directly onto fixed structures, and those painted elsewhere and later "attached" to fixed public structures. (280 App Div at 409.)

In *Matter of Long Is. Light. Co. v Industrial Commr. of N.Y. State* (40 AD2d 1003 [1972], *affd* 34 NY2d 725 [1974]), the Second Department found that, as to a job for the installation of street lights, the purpose was "the construction of fixtures for a public object." (40 AD2d at 1004.) This, according to the Court, required it to be deemed a public work, rather than simply the provision of a lighting service.

Indeed, any view that status as a public work is determined solely by focusing on the work's purpose and function ignores the weight of precedent that clearly establishes that a finding of public purpose alone is not sufficient for a finding that "public work" is being performed. (*See also County of Suffolk v Coram Equities, LLC*, 31 AD3d 687 [2d Dept 2006] [construction of facility to be used as public building not "public work" because constructed on privately-owned land]; *Cattaraugus Community Action v Hartnett*, 166 AD2d 891 [4th Dept 1990] [home operated as facility for homeless mothers under a state program not a public work because privately developed and owned]; *Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d 205 [3d Dept 1990] [construction of office building for county agency/social service department not a "public work" because project privately financed and on privately owned property].)

Moreover, the plaintiffs' reliance on case law, which they cite for the proposition that purpose and function alone determine whether a project is a public work, is misplaced: *Matter of Twin State CCS Corp.* concerned the installation of a telecommunications system in a public building. The Court found it was a public work because it was not only installed in a public building for use by public employees, it was a system which required "a degree of *construction*-like labor." (*Twin State CCS Corp.*, 72 NY2d at 899 [emphasis added].) Thus, the Court acknowledged that construction of, in this case, a fixed structure was as necessary a determinative characteristic as the fact that the building was to be used for public employees.

Neither does *Matter of Sewer Envtl. Contrs.* support the plaintiffs' contention because sewers are already a specifically included "public work" pursuant to Labor Law § 220. (*See* Labor Law § 220 [3-a] [a].) So the enunciated principle that "function rather than magnitude" should be the test appears to refer to the finding that "sewer cleaning involves repair, [and] repair of a public work is a public work." (*Sewer Envtl. Contrs.,* 98 AD2d at 606 [internal quotation marks omitted].)

Indeed, Labor Law § 220 (3-a) (a) further supports the defendants' argument that the statute plainly reflects legislative intent to limit public work to the construction, repair and maintenance of fixed structures. The specific section which relates to the setting of wages directs that the department for whom the work is done shall file a proper classification of the workers involved in the "public work" by taking into account whether the work is "heavy and highway, building, sewer and water, tunnel work or residential." (*See* Labor Law § 220 [3-a] [a] [i].)

In more than 50 years, only one decision, on which the plaintiffs also rely, has found that repair work on a vessel is "public work." In *Matter of Falk v Gerosa* (138 NYS2d 425 [Sup Ct, NY County 1954]), the court acknowledged that Labor Law § 220 applies to those "whose work has to do with the construction and maintenance of the fabric and essential parts of public buildings." (*Id.* at 426, quoting *Matter of Golden v Joseph,* 307 NY 62, 67 [1954].) However, the court found that seamen on sludgeboats had as much connection with building construction and maintenance as that of *Miele*'s sign painters and sign letterers, and therefore were entitled to the prevailing wage. The court's incomprehensible analysis would be sufficient reason to question its precedential value even if it was a decision binding on this Court, which it is not.

Accordingly, the order of the Supreme Court, Bronx County (Wilma Guzman, J.), entered May 19, 2010, which denied plaintiffs' motion for partial summary judgment on the issue of liability and granted defendants' motion for summary judgment dismissing the complaint, should be affirmed, without costs.

ANDRIAS, J.P., SAXE, ABDUS-SALAAM and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, Bronx County, entered May 19, 2010, affirmed, without costs.