[997 NE2d 1223, 975 NYS2d 371]

Manuel De La Cruz et al., Appellants, v Caddell Dry Dock & Repair Co., Inc., et al., Respondents.

Argued May 30, 2013; decided June 27, 2013

## POINTS OF COUNSEL

*Virginia & Ambinder, LLP*, New York City (*James Emmet Murphy* and *Lloyd R. Ambinder* of counsel), for appellants. I. The work performed by plaintiffs-appellants constituted "public work." (*Matter of New York Charter School Assn. v Smith*, 15 NY3d 403; *Matter of Miele v Joseph*, 305 NY 667; *Matter of Golden v Joseph*, 307 NY 62; *Title Guaranty & Trust Co. of Scranton v Crane Co.*, 219 US 24; *Ellis v United States*, 206 US 246; *United States for Use & Benefit of Owens v Olympic Mar. Servs., Inc.*, 827 F Supp 1232; *Jewett v Commonwealth Bond Corp.*, 241 App Div 131; *Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327; *All Seasons Resorts v Abrams*, 68 NY2d 81; *Matter of Fink v Lefkowitz*, 47 NY2d 567.) II. The Appellate Division's holding misconstrues the definition of the term "construction." (*Matter of Gaston v Taylor*, 274 NY 359; *Matter of Sewer Envtl. Contrs. v Goldin*, 98 AD2d 606; *Brukhman v Giuliani*, 94 NY2d 387; *Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532, 63 NY2d 810; *Title Guaranty & Trust Co. of Scranton v Crane Co.*, 219 US 24; *Matter of Twin State CCS Corp. v Roberts*, 125 AD2d 18, 72 NY2d 897; *Miele v Joseph*, 280 App Div 408, 305 NY 667; *Aguilar v Henry Mar. Serv., Inc.*, 12 AD3d 542; *Caddy v Interborough R.T. Co.*, 195 NY 415; *Lee v Astoria Generating Co., L.P.*, 13 NY3d 382.) III. The Appellate Division misinterpreted this Court's holding in *Brukhman v Giuliani* (94 NY2d 387 [2000]). (*United States v City of New York*, 359 F3d 83; *Stone v McGowan*, 308 F Supp 2d 79; *Matter of Carver v State of New York*, 87 AD3d 25; *Matter of Onondaga-Cortland-Madison Bd. of Coop. Educ. Servs. v McGowan*, 285 AD2d 36; *Matter of Pansini Stone Setting Inc. v Crow & Sutton Assoc. Inc.*, 20 AD3d 481; *Matter of Lantry v State of New York*, 6 NY3d 49; *Bucci v Village of Port Chester*, 22 NY2d 195; *Matter of Gaston v Taylor*, 274 NY 359; *Austin v City of New York*, 258 NY 113; *Varsity Tr. v Saporita*, 71 AD2d 643, 48 NY2d 767.)

*Blank Rome LLP*, New York City (*Richard V. Singleton II* and *Anthony A. Mingione* of counsel), and *Frank & Associates, P.C.*, Farmingdale (*Peter A. Romero* of counsel), for respondents. I.

The Appellate Division correctly concluded that the Prevailing Wage Act did not apply because the work performed under the Caddell contracts was not "public work." (*People v Crane*, 214 NY 154; *Brukhman v Giuliani*, 94 NY2d 387; *Bucci v Village of Port Chester*, 22 NY2d 195; *Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532, 63 NY2d 810; *Caddy v Interborough R.T. Co.*, 195 NY 415; *Aguilar v Henry Mar. Serv., Inc.*, 12 AD3d 542; *Madden v Hughes*, 104 App Div 101; *Flannigan v Ryan*, 89 App Div 624; *Chaffee v Union Dry Dock Co.*, 68 App Div 578; *Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207.) II. New York's Constitution and the Prevailing Wage Act should be interpreted in accordance with their legislative history and New York law—not in accordance with federal law. (*Brukhman v Giuliani*, 94 NY2d 387; *Varsity Tr. v Saporita*, 71 AD2d 643; *Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327; *State of New York v Mobil Oil Corp.*, 38 NY2d 460; *All Seasons Resorts v Abrams*, 68 NY2d 81; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Marx v Bragalini*, 6 NY2d 322; *Title Guaranty & Trust Co. of Scranton v Crane Co.*, 219 US 24; *Building & Constr. Trades Dept. AFL-CIO v United States Dept. of Labor Wage Appeals Bd.*, 932 F2d 985; *Safari Circuits, Inc. v Chicago School Reform Bd. of Trustees*, 474 F Supp 2d 993.)

**OPINION OF THE COURT**

PIGOTT, J.

We hold that a municipal vessel is a public work within the meaning of Labor Law § 220 and article I, § 17 of the State Constitution—so that workers involved in its construction, maintenance or repair must be paid prevailing wages—if the vessel's primary objective is to benefit the general public.

I

Plaintiffs were employed by defendant Caddell Dry Dock & Repair Co., Inc. (Caddell), which operates six floating dry docks on Staten Island, where workers repair, refurbish and maintain vessels for various tug and barge companies, and for the City of New York. The vessels serviced there have included the Staten Island Ferry vessels, New York City fireboats, and New York City Department of Sanitation garbage barges. In September 2002, plaintiffs, as third-party beneficiaries of contracts between Caddell and New York City agencies, began this action against Caddell and its sureties, seeking enforcement of contractual provisions requiring the payment of the prevailing

rate of wages and supplemental benefits. Plaintiffs, relying on Labor Law § 220 and article I, § 17 of the New York State Constitution, contend that the vessels they labored on were "public works" within the meaning of those laws. They sued individually and on behalf of a putative class of approximately 750 Caddell employees who repaired and maintained New York City vessels under contracts between Caddell and city agencies.[1]

Following discovery, defendants moved for summary judgment dismissing the complaint on the ground that no "public work" was involved. Plaintiffs cross-moved for partial summary judgment as to liability. Supreme Court denied plaintiffs' cross motion and granted defendants' motion, dismissing the complaint. The Appellate Division affirmed, holding that it was "constrained" by our decision in *Brukhman v Giuliani* (94 NY2d 387 [2000]) to find that the city vessels in question were not "public works" within the meaning of Labor Law § 220 (95 AD3d 297, 298 [1st Dept 2012]). We granted plaintiffs leave to appeal, and now reverse.

## II

Pursuant to Labor Law § 220, contractors engaged in public projects must pay their workers wages and supplemental benefits that "shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work . . . is to be situated, erected or used" (Labor Law § 220 [3] [a]). The substance of the statutory requirement dates to the 1890s.[2] The State Constitution was amended in 1905 to authorize such prevailing wage legislation, and the law was preserved as a constitutional requirement in its present form in the 1938 State Constitution (*see* 3 Rev

---

1. On appeal from an order dismissing plaintiffs' claims, the Appellate Division reinstated two of plaintiffs' claims, breach of contract against Caddell and joint and several liability against the sureties (*see* 22 AD3d 404 [1st Dept 2005]). Upon remittal to Supreme Court, the action was certified as a class action.

2. The particular language quoted from section 220 was contained in L 1899, ch 567, § 1. As Judge Cardozo wrote,

> "[t]he public policy of the State declared by successive Legislatures during a period of thirty years (L. 1897, ch. 415; L. 1899, ch. 567; L. 1900, ch. 298; L. 1906, ch. 506; L. 1909, ch. 292; L. 1913, ch. 494; L. 1916, ch. 152; L. 1921, ch. 642) exacts the payment of the rate of wages prevailing in the vicinage to laborers and mechanics employed upon the public works" (*Campbell v City of New York*, 244 NY 317, 324 [1927]; *see also* L 1894, ch 622).

Rec, 1938 NY Constitutional Convention at 2201; *see generally Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney*, 89 NY2d 395, 401 [1996]). Under article I, § 17 of the State Constitution,

> "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, . . . shall . . . be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used."

In the past, we adopted a two-prong test to determine whether a particular project is bound by the constitutional prevailing wage rate requirement, namely the standard set out in *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532 [4th Dept 1983], *affd for reasons stated below* 63 NY2d 810 [1984]). "(1) [T]he public agency must be a party to a contract involving the employment of laborers, workmen, or mechanics, and (2) the contract must concern a public works project" (*Matter of New York Charter School Assn. v Smith*, 15 NY3d 403, 413 [2010], quoting *Erie County Indus. Dev. Agency*, 94 AD2d at 537). In the present case, the second prong of the *Erie County* test is at issue; the question is whether a "public work" must be a structure attached to land. In the absence of direct and specific evidence of the legislative intent regarding the term, a proper analysis may be informed by three sources: first and most importantly, the language of the statute and constitutional provision itself; second, precedent; and third, dictionary definition.

### III

The term "public work" is used in two, distinct ways: first, to denote a public undertaking or endeavor performed by workers, and second, to refer to the physical product of such work.[3] It is the second meaning of the term that is relevant here.

Labor Law § 220 and the constitutional provision have some common language: a laborer, worker, or mechanic, employed by a contractor or subcontractor upon a public work, shall not be paid less than the rate of wages prevailing "in the same trade

---

**3.** For example, in NY Constitution, article I, § 17, the term is used initially in the first sense ("in the performance of any public work") and then in the second sense ("where such public work is to be situated, erected or used").

or occupation in the locality within the state *where such public work is to be situated, erected or used*" (NY Const, art I, § 17 [emphasis added]; *see also* Labor Law § 220 [3] [a]; L 1899, ch 567, § 1). It is clear from the words "situated, erected or used" that the term "public works" was intended to extend beyond structures that are erected, and also include at least some things for which the participles "situated" or "used" are more fitting. While a vessel would not be described as being "erected," it would be appropriate to describe it as being "situated" or "used." The language of the statute and constitutional provision, therefore, supports the interpretation advanced by the plaintiffs in this case, as has the practical view taken by federal authorities that have considered the term, in the corresponding federal wage law (*see* 40 USC § 3142 [Davis-Bacon Act]; 38 US Atty Gen 418 [1936] [interpreting Davis-Bacon Act (former 40 USC § 276a)]) and in other similar contexts (*see Title Guaranty & Trust Co. of Scranton v Crane Co.*, 219 US 24, 33 [1910]; *see also e.g. United States for Use & Benefit of Owens v Olympic Mar. Servs., Inc.*, 827 F Supp 1232, 1233-1234 [ED Va 1993]). In the words of Justice Holmes, "[w]hether a work is public or not does not depend upon its being attached to the soil" (*Title Guaranty & Trust Co.*, 219 US at 33).

## IV

Our case law makes clear that Labor Law § 220 "is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view" (*Austin v City of New York*, 258 NY 113, 117 [1932]). In *Matter of Gaston v Taylor* (274 NY 359 [1937]), we held that workers may be "employed upon 'public works' within the meaning of the statute" even when "their work relates to repairing and maintaining public works rather than constructing them" (274 NY at 363). However, the work must be "construction-like labor" in order to qualify (*Matter of Twin State CCS Corp. v Roberts*, 72 NY2d 897, 899 [1988]). The prevailing wage requirement "applies only to workers involved in the construction, replacement, maintenance [or] repair of 'public works' " (*Brukhman*, 94 NY2d at 396, quoting *Varsity Tr. v Saporita*, 71 AD2d 643, 644 [2d Dept 1979], *affd* 48 NY2d 767 [1979]). Finally, "[t]o be a public work the project's primary objective must be to benefit the public" (*Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d

205, 207 [3d Dept 1990], *affd for reasons stated below* 76 NY2d 993 [1990]; *see also e.g. Matter of Hart v Holtzman*, 215 AD2d 175, 176 [1st Dept 1995]; *Matter of Vulcan Affordable Hous. Corp. v Hartnett*, 151 AD2d 84, 86-87 [3d Dept 1989]; *Matter of Miele v Joseph*, 280 App Div 408, 409-410 [1952], *affd* 305 NY 667 [1953]).

Here, the Appellate Division believed itself to be bound by *Brukhman v Giuliani*. That case presented the "question whether the prevailing wage provision of the New York State Constitution (art I, § 17) applies to public assistance beneficiaries who are statutorily required to participate in a Work Experience Program . . . as a condition of continued receipt of monetary grants" from the New York City Department of Social Services (*Brukhman*, 94 NY2d at 390). Recipients, who were assigned to work at not-for-profit organizations and New York City agencies, challenged a method of calculation of the required hours of participation, whereby the amount of benefits received was divided by the federal minimum wage. Recipients wanted the calculations to be based on the applicable prevailing wage rate under New York law, which was a higher rate, thus generating a lower number of hours they would have to work. The work in question "ranged from skilled electrical and painting work to office clerical functions" (*id.* at 391).

We held that the recipients were not entitled to the requested prevailing wage calculations for two principal reasons. They were not "in the employ of" anyone within the meaning of the constitutional provision (*id.* at 395-396). Additionally, "a department of a municipality—even though it may enter into agreements with the municipality to provide Program positions—does not qualify as a 'contractor or subcontractor' within the meaning of the constitutional provision" and "the other entities cooperating with the Work Experience referrals do not fall within the classification of construction and organized labor-related contractors" (*id.* at 395). Although at one point we stated that "plaintiffs were not engaged in 'public work' within the envisioned scope of that constitutional term of art" (*id.* at 393), we noted that "since plaintiffs do not meet the other requisites of this constitutional entitlement, we need not parse these facial claims to determine whether some might be deemed to squeeze into the 'public work' column" (*id.* at 396). To the extent we decided the issue, our holding was that the recipients were not employed upon "public works" simply because they

were assigned to work at a city agency or an entity cooperating with a city program; they would have to show that they were involved in "construction, replacement, maintenance [or] repair" (*id.* at 396)—a factor that is not disputed in the present case. In short, *Brukhman* is not instructive on the issue of whether a vessel is a "public work" and the Appellate Division erred in considering the case dispositive. Far more instructive is the above-cited case law holding that the primary purpose or objective of a project must be public in order for it to be a public work.

## V

The current edition of Black's Law Dictionary defines "public works" as "[s]tructures (such as roads or dams) built by the government for public use and paid for by public funds" (Black's Law Dictionary 1746 [9th ed 2009]). More pertinently, given the nineteenth-century origin of the law we are concerned with, the first edition of Black's Law Dictionary defined "public works" as "[w]orks, whether of construction or adaptation, undertaken and carried out by the national, state, or municipal authorities, and designed to subserve some purpose of public necessity, use, or convenience; such as public buildings, roads, aqueducts, parks, etc." (Black's Law Dictionary 964 [1st ed 1891]; *see also* Black's Law Dictionary 1231 [2d ed 1910] [same]).[4]

Similarly broad definitions of "public works" are found in other dictionaries—"works such as roads, railways, bridges, etc. constructed for public use or service at public cost" (Webster's New Twentieth Century Dictionary of the English Language Unabridged 1368 [25th ed 1950]); "works (as schools, highways, docks) constructed for public use or enjoyment esp[ecially] when financed and owned by the government" (Merriam-Webster's Collegiate Dictionary 1006 [11th ed 2003]); or "construction or engineering operations carried out by or for the State or local government on behalf of the community" (The Oxford English

---

4. It is true that for a time Black's Law Dictionary included, as a second, alternative definition, the words "[a]ll fixed works constructed for public use" (*see* Black's Law Dictionary 1856 [3d ed 1933], citing *State v A.H. Read Co.*, 33 Wyo 387, 399, 240 P 208, 211 [Wyo 1925]; Black's Law Dictionary 1781 [4th ed 1951]; Black's Law Dictionary 1440 [5th ed 1979]; Black's Law Dictionary 1606 [6th ed 1990]). This alternative definition was removed for the publication of the seventh edition (*see* Black's Law Dictionary 1601 [7th ed 1999]).

Dictionary Third Edition [published on OED Online while in progress], available at http://www.oed.com).[5]

Two central aspects of the meaning of "public works" may be discerned from the dictionaries—public works are works paid for by public funds and made for public use or other benefit. Although the illustrative examples given in dictionary entries are frequently fixed structures, it is clear that the notion that a "public work" must be attached to the land is not part of its central meaning.

## VI

We therefore conclude that a three-prong test should be applied to determine whether a particular project is subject to the prevailing wage requirements of Labor Law § 220 and article I, § 17 of the State Constitution. First, a public agency must be a party to a contract involving the employment of laborers, workers, or mechanics. Second, the contract must concern a project that primarily involves construction-like labor and is paid for by public funds. Third, the primary objective or function of the work product must be the use or other benefit of the general public.

We recognize that this test will have to be applied on a case-by-case basis in order for its contours to be fully explored. Our holding is consistent, however, with Appellate Division cases ruling that a work is not public when—although "it serves a public function" such as "the rehabilitation of neighborhoods" (*Vulcan Affordable Hous. Corp.*, 151 AD2d at 87) and is paid for in large part by public funds—its objective is private residence (*see id.*), or it "is used for a specific and narrowly defined group" of private citizens (*Cattaraugus Community Action v Hartnett*, 166 AD2d 891, 891 [4th Dept 1990]).

As to the facts underlying this appeal, the application of the law is straightforward. Plaintiffs worked on such vessels as the Staten Island Ferry boats, city fireboats, and municipal garbage barges. A ferry boat is, of course, made for the use of the general public, as is a bus or train. While we recognize that a fireboat, tug or barge is not made to be used *by* the public, there is no doubt that its function is to serve the general public. For example, a New York City fireboat is used by firefighters for the

---

**5.** Merriam-Webster's Third New International Dictionary favors a narrower definition (*see* Webster's Third New International Dictionary of the English Language Unabridged 1836 [2002]) incorporating the word "fixed."

benefit of the entire City's public. There is no justification for making fine distinctions between vessels according to whether or not members of the public have access to them. We have not differentiated buildings used by public employees according to whether there is public access (*see Twin State CCS Corp.*, 72 NY2d at 899). The dispositive question is whether their primary function is to serve the general public.

Accordingly, the order of the Appellate Division should be reversed, with costs, and plaintiffs' motion for partial summary judgment on the issue of liability granted.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order reversed, with costs, and plaintiffs' motion for partial summary judgment on the issue of liability granted.