Johnson v State of New York (2025 NY Slip Op 25284)

[*1]

Johnson v State of New York

2025 NY Slip Op 25284

Decided on July 11, 2025

Court Of Claims 

Chaudhry, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 11, 2025
Court of Claims 

Christoper Johnson, Claimant,

againstThe State of New York, Defendant.
WILLIAM SIMMES, Claimant,
againstTHE STATE OF NEW YORK, Defendant.
JAMES RYAN, Claimant,
againstTHE STATE OF NEW YORK, Defendant.

Claim No. 135537

For Claimant:HARDING MAZZOTTI, LLPBy: Melanie J. Lazarus, Esq. and Kelly A. Magnuson, Esq. 
For Defendant:LETITIA JAMES, New York State Attorney GeneralBy: C. Harris Dague, Assistant Attorney General

Zainab A. Chaudhry, J.

In these three actions,[FN1]
 claimants—former K-9 handlers for the New York State Division of Homeland Security and Emergency Services (DHSES)—are each seeking monetary compensation for time they spent outside of work hours caring for their assigned dogs. On their face, the nearly identical claims assert causes of action under the Federal Fair Labor Standards Act (FLSA) and, nominally, the New York Labor Law.[FN2]
Pursuant to CPLR 3211 (a) (2), defendant the State of New York moves to dismiss all three claims for lack of subject matter jurisdiction on the grounds that they are untimely; fail to satisfy the substantive pleading requirements of Court of Claims Act (CCA) § 11 (b); and should have been brought in Supreme Court via CPLR article 78 proceedings.[FN3]
Each claimant cross-moves for leave to serve late claims and/or deem their claims timely filed under CCA § 10 (6).
For the reasons stated below, the claims of Christopher Johnson and William Simmes are dismissed as untimely. As to James Ryan, a limited portion of his claim is timely by virtue of the Covid-19 toll. However, the Court is unable to calculate on the current record exactly which portion that is and, thus, defendant's motion to dismiss Ryan's claim is denied without prejudice to renew. Claimants' cross-motions for late claim relief are denied because the applications were [*2]not brought within the underlying substantive statute of limitations.
 TIMELINESSDefendant's threshold argument on its motion to dismiss each claim is that the claims are untimely, having been filed and served beyond the applicable six-month commencement period contained in CCA § 10 (4).[FN4]
The time limitations of the CCA "are distinctly concerned with the subject matter jurisdiction" of the Court because State "has waived its sovereign immunity against suit only to the extent that claimants comply with the provisions of the statute" (Lyles v State of New York, 3 NY3d 396, 400 [2004]). Thus, "nothing less than strict compliance with the jurisdictional requirements of the Court of Claims Act is necessary" (Kolnacki v State of New York, 8 NY3d 277, 281 [2007]). As relevant here, CCA section 10 (4) provides that a "claim for breach of contract . . . and any other claim not otherwise provided for by this section . . . shall be filed and served upon the attorney general within six months after the accrual of such claim" (CCA § 10 [4]). The parties agree that the six-month period of section 10 (4) is applicable to the claims for unpaid overtime raised here (see Bergmann v State of New York, 281 AD2d 731, 733 [3d Dept 2001]). It is also undisputed that none of the claimants served the Office of the Attorney General with written notices of intention to file a claim, which would have extended their time to file to two years after the time their claims accrued (see CCA § 10 [4]).
Claimants Johnson and Simmes concede that their claims were not timely commenced (see Johnson Claim, ¶ 7; Simmes Claim, ¶ 6). The latest accrual dates alleged in their respective claims are June 19, 2017 (Johnson Claim, ¶ 4), and November 17, 2017 (Simmes Claim, ¶ 4), and their claims were each served and filed in 2020—years beyond the six-month period imposed by CCA § 10 (4). In opposition to defendant's motions, they argue only that the Court will have subject matter jurisdiction over their claims if their applications for late claim relief are granted. The question of claimants' entitlement to late claim relief is an independent inquiry, however; even if such relief were to be granted, it would require the filing and service of a new claim inasmuch as the Court lacks authority to deem the original claims timely nunc pro tunc (see CCA § 10 [6]; Bergmann, 281 AD2d at 733, citing Byrne v State of New York, 104 AD2d 782, 783 [2d Dept 1984], lv denied 64 NY2d 607 [1985]; Friedlander v State of New York, UID No. 2024-062-043 [Ct Cl, Oct. 11, 2024]). Accordingly, the untimely claims of Johnson and Simmes are dismissed for lack of subject matter jurisdiction (see Alston v State of New York, 97 NY2d 159, 164 [2001] [affirming dismissal of FLSA overtime pay claims for failure timely to file claims under CCA § 10 (4)]; Bergmann, 281 AD2d at 733 [same]). Given this conclusion, defendant's alternative arguments for dismissal of the claims of Johnson and Simmes need not be considered.
Ryan's claim, on the other hand, partially survives the requisite timeliness scrutiny. Ryan alleges that his claim first accrued on December 23, 2006, when he commenced his K-9 handler duties (Ryan Claim, ¶ 4). Although Ryan retired from DHSES employment on December 23, 2016 (id. ¶ 2), he alleges that he continued to care for his dog as required and, thus, that the claim continued to accrue until the dog's death on January 22, 2020 (id. ¶ 4). In its motion to dismiss, defendant does not dispute Ryan's characterization of the accrual dates of his claim. Indeed, defendant specifically states that, for purposes of the motion to dismiss, defendant "takes [*3]no position regarding the operative accrual date" of Ryan's claim (Combined Mem of Law in Supp of Def's Mots to Dismiss, at 7 n 5). Rather, defendant argues only that, "[r]egardless of which date the Court uses to calculate timeliness, . . . Ryan did not comply with the statutory timeliness requirements" (id. at 7). Applying the applicable six-month period of CCA § 10 (4), defendant thus asserts that Ryan only had until either June 23, 2017 (based on the date of his retirement), or July 22, 2020 (based on the date of the dog's death), to bring a timely claim. Here, because Ryan filed and served his claim beyond either of these dates—on November 13, 2020 and November 17, 2020, respectively—defendant contends that dismissal is required.
As an initial matter, it is not clear at this early stage of the litigation whether Ryan would be considered an employee under the FLSA such that he may assert a claim under its overtime wage protections for time spent caring for his K-9 partner after his retirement until the end of the dog's life. The statute circularly defines "employee" to mean "any individual employed by an employer" (29 USC § 203 [e] [1]), and defines "employ" as "to suffer or permit to work" (id. § 203 [g]). As the Court of Appeals has recognized however, the FLSA has " 'striking breadth' and 'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles' " (Matter of Carver v State of New York, 26 NY3d 272, 283 [2015], quoting Nationwide Mut. Ins. Co. v Darden, 503 US 318, 326 [1992]). The test is one of "economic reality"—a multi-factor analysis that examines the "totality of [the] circumstances" presented (id. at 279, 281 [internal quotation marks omitted]; see also Brown v New York City Dept. of Educ., 755 F3d 154, 167 [2d Cir 2014]). Given the complexities involved in determining who qualifies as an employee under the FLSA, at least one federal court has held that the "characteriz[ation] of [a] worker as retired does not automatically deprive [the worker] of the protection of the FLSA when [the worker] is suffered to work for the benefit of another" (Roberts v Gwinnett County, Georgia, 225 F Supp 3d 1400, 1411 [ND Ga, Atl Div 2016] [internal quotation marks omitted]). In Roberts, the district court denied the parties' motions for summary judgment and stated that it was leaving for the factfinder the issue of whether the defendant police department "ha[d] obtained cost savings in the labor of" the plaintiff, a retired evidence technician, "by allowing (her) to absorb the responsibilities and work" of testifying in court without wage payment for the benefit of the department that "should have been or could be performed in-house" by current department employees (id. at 1418). But inasmuch as defendant has failed to argue—let alone establish—on the motion to dismiss that Ryan was not covered by the FLSA after his retirement from DHSES,[FN5]
and no record before the [*4]Court exists upon which to make such a determination,[FN6]
the Court will use the latest possible accrual date alleged in Ryan's claim to calculate whether the claim was timely filed, namely, January 22, 2020.
Using that date of accrual with the six-month limitations period of CCA § 10 (4), a claim filed and served by July 22, 2020 would have been timely commenced. To be sure, defendant is correct that Ryan filed and served his claim well beyond this date, in mid-November 2020. However, defendant's calculation fails to take into account the effect of the Covid-19 toll on Ryan's time to bring his claim. That toll was in effect from March 20, 2020—before Ryan's time expired—until November 3, 2020 (see Brash v Richards, 195 AD3d 582, 583-585 [2d Dept 2021] [citing Executive Orders and holding that they constituted a toll of filing deadlines]; Matter of Roach v Cornell Univ., 207 AD3d 931, 933 [3d Dept 2022] [agreeing with Brash's holding that the Executive Orders constituted a toll]; see also Harden v Weinraub, 221 AD3d 1460, 1461-1462 [4th Dept 2023]; Murphy v Harris, 210 AD3d 410, 411-412 [1st Dept 2022]; Foy v State of New York, 71 Misc 3d 605, 608 [Ct Cl 2021] [Sise, P.J.]). At the time the toll went into effect, Ryan had four months and two days left to bring his claim. When the toll was lifted, that same period of time remained available to Ryan, who filed his claim on November 13, 2020, only ten days after the tolling period ended, and served his claim on the Attorney General four days later, on November 17, 2020. Accordingly, Ryan's action was timely commenced—at least in part.
Given the alleged continuing nature of the damages and the applicable six-month limitations period of CCA § 10 (4), Ryan's claim for damages is only timely as to that portion which accrued in the six months preceding the commencement of the claim (see Bergmann, 281 AD2d at 732-733, affg UID No. 2000-011-101 [Ct Cl, Mar. 27, 2000] [McNamara, J.]; Carbone v State of New York, UID No. 2001-015-177 [Ct Cl, Sept. 14, 2001] [Collins, J.]; see also Alston, 97 NY2d at 160-164 [holding that State retained its sovereign immunity with respect to FLSA claims accruing earlier than six months before filing of claim due to time limitations of CCA § 10 (4), upon which waiver of such immunity was conditioned]). Thus, even taking into account the Covid-19 toll, the majority of Ryan's claim is untimely to the extent he seeks to recover damages for any alleged FLSA violations that occurred earlier than six months before the date he commenced his claim (see CCA § 10 [4]; Bergmann, 281 AD2d at 733; see also Bergmann, UID No. 2000-011-101, at n 1). Some part of his claim, however, is timely by operation of the toll. Although the Court requested supplemental briefing from the parties as to how the toll should be applied to Ryan's claim with reference to section 10 (4)'s six-month limitations period,[FN7]
the [*5]parties' responses to the Court's query did not elucidate the issue. The Court therefore cannot determine on the record before it exactly which portion of Ryan's claim is timely. Accordingly, defendant's motion to dismiss Ryan's claim is denied without prejudice to renew. 

OTHER JURISDICTIONAL ISSUES
Because some limited portion of Ryan's claim is timely, the Court considers defendant's other asserted bases for dismissal of the claim, but finds them unpersuasive. It is well established that this Court " 'has jurisdiction to entertain a claim for money damages arising out of alleged violations of the [FLSA]' " (Fauss v State of New York, Ct Cl, Oct. 6, 2020, Hard, J., Claim No. 132396, at 5, quoting Carbone, UID No. 2001-015-177; see Gorski v State of New York, 23 Misc 3d 327, 329 [Ct Cl, 2008] [DeBow, J.]; see generally Alston, 97 NY2d 159; Bergmann, 281 AD2d 731). Contrary to defendant's argument, Ryan is not challenging any particular DHSES policy or compensation determination while seeking incidental monetary relief. Indeed, as Ryan notes, defendant has not even identified any such general administrative policy or determination specific to Ryan that existed at the time the claim was filed. Thus, Ryan was not required to proceed by way of an article 78 proceeding in Supreme Court (see Matter of Gross v Perales, 72 NY2d 231, 235-236 [1988]; Hoffman v State of New York, 42 AD3d 641, 642 [3d Dept 2007]; see also Bertoldi v State of New York, 275 AD2d 227, 228 [1st Dept 2000], appeal dismissed 95 NY2d 958 [2000], lv denied 96 NY2d 706 [2001]).
In addition, Ryan's claim satisfies the substantive pleading requirements of CCA § 11 (b) with respect to the time when and place where the claim arose, as well as the nature of the claim, the damages sustained, and the total sum claimed. Ryan's claim alleges that he was an employee of DHSES who was obligated to house his K-9 partner at his home and to care for the dog for life pursuant to an agreement or understanding with DHSES. Ryan further alleged that he was entitled to overtime wages under the FLSA, and that he had worked overtime caring for his dog, but was not paid such compensation for work weeks beginning on December 23, 2006, and continuing until the date his dog died (albeit after Ryan's retirement from service), on January 22, 2020 (see Lepkowski v State of New York, 1 NY3d 201, 209 [2003]). Ryan provided his job title and hourly wage. His address is noted on the claim, which also asserts that Ryan engaged in 10 hours of additional work per week during the relevant time period for the dog's care and maintenance—including purchasing supplies; taking the dog to the vet or performing other medical care; and feeding, bathing, grooming, walking, training, exercising, and cleaning up after the dog. The claim alleges that Ryan performed these tasks at his home and when transporting the dog in his vehicle. The claim also specified the amount that Ryan was seeking in damages.
These allegations were sufficiently definite "to enable the State to investigate the claim[ ] promptly and to ascertain its liability under the circumstances" (id. at 207 [internal quotation marks and ellipsis omitted]; see also Jones v State of New York, 56 AD3d 906, 908 [3d Dept 2008]). As long as the information in a claim complies with this guiding principle, it need not be pled with "absolute exactness" (Katan v State of New York, 174 AD3d 1212, 1213 [3d Dept 2019] [internal quotation marks omitted]). And contrary to defendant's suggestion, with respect to the nature of the claim, claimants are "not required to also identify the specific evidentiary facts underlying the[ir] allegations" in order to meet the requirements of section 11 (b) (Young v State of New York, 223 AD3d 985, 986 [3d Dept 2024]; see also Davila v State of New York, 217 AD3d 921, 922 [2d Dept 2023]).

LATE CLAIM RELIEF
Turning then to claimants' cross-motions for late claim relief, CCA § 10 (6) permits the Court to exercise its discretion to allow the filing of a late claim only if the application is made "before an action asserting a like claim against a citizen of the state would be barred under the provisions of [CPLR article 2]." In addition, section 10 (6) requires that an application for late claim relief be accompanied by the claim proposed to be filed.
As an initial matter, defendant is correct that claimants' cross-motions do not include verified proposed claims expressly labeled as such. However, a copy of each claimant's previously filed and served claims are attached to their cross-motion papers and are identified as the proposed claims in their respective memoranda of law in support of the cross-motions. In these circumstances, the original claims will be construed as the proposed claims for purposes of the cross-motions (see Friedlander, UID No. 2024-062-043; Torres v State of New York, UID No. 2010-042-518 [Ct Cl, Aug. 5, 2010] [Siegel, J.]).
The critical question with respect to claimants' cross-motions for late claim relief is whether their applications have been brought within the underlying substantive statute of limitations. To the extent the claims assert a cause of action under the FLSA, the relevant limitations period is either two or three years. An action to recover unpaid overtime compensation or liquidated damages under the FLSA is "barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued" (29 USC § 255 [a]; see McLaughlin v Richland Shoe Co., 486 US 128, 129 [1988]; Whiteside v Hover-Davis, Inc., 995 F3d 315, 318 [2d Cir 2021]). As to Johnson and Simmes, even assuming they would be entitled to the FLSA's three-year period, their late claim applications are untimely as to that federal statutory cause of action. The latest accrual date alleged by Johnson is June 19, 2017, and Simmes' latest accrual date is November 17, 2017. Although their original claims—both filed on October 29, 2020—expressly recognized that their claims were untimely and indicated that applications for permission to file a late claim were being filed simultaneously (see Johnson Claim, ¶ 7; Simmes Claim, ¶ 6), inexplicably no such motions were filed at or around that time. Instead, their present applications for such relief were not filed in this Court until April 19, 2024, well beyond the maximum three-year period provided for commencement of an action under the FLSA (see Bergmann, 281 AD2d at 733-734). Their failure timely to file their motions for late claim relief thus "creates a jurisdictional defect" and, as noted above, "the [C]ourt is without discretionary power to grant nunc pro tunc relief" (id. at 733 [internal quotation marks omitted]).
Johnson's and Simmes' attempt to rely on the Covid-19 toll to save their claims is unavailing. Contrary to their misunderstanding, the toll is not applied by simply adding 228 days to any applicable limitations period. Rather, as relevant here, the Covid-19 toll operated by stopping any statute of limitations that was already running for the duration of the toll, and the limitations period then resumed running once the toll ended; but only the time that had been remaining on the statute of limitations when the tolling period commenced is available to the party seeking to rely on it (see Murphy, 210 AD3d at 411, citing Chavez v Occidental Chem. Corp., 35 NY3d 492, 505 n 8 [2020]). Here, even applying the benefit of the Covid-19 toll to the maximum three-year FLSA limitations period, Johnson would only have had 91 days after the toll ended on November 3, 2020, or until February 2, 2021, to bring his motion for late claim [*6]relief. Simmes would have had 242 days left after the toll ended, or until July 6, 2021,[FN8]
to bring his motion for late claim relief. Neither claimant timely did so. Accordingly, because the proposed claims are time-barred as to the FLSA causes of action, there is no need to consider any of the other statutory factors typically relevant to the determination of an application for permission to file a late claim (see CCA § 10 [6]; see also Bay Terrace Coop. Section IV v New York State Employees' Retirement Sys. Policemen's & Firemen's Retirement Sys., 55 NY2d 979, 981 [1982]).
To the extent claimants assert a cause of action under the New York Labor Law, their cross-motions for late claim relief must also be denied. As an initial matter, defendant appears correct that their conclusory reliance on the Labor Law seems designed to conflate their causes of action to try and take advantage of a longer statute of limitations. For example, although the Johnson and Simmes claims briefly reference the Labor Law and its limitations period, their substantive allegations highlight DHSES's alleged FLSA violations. Indeed, claimants' cross-motion papers fail even to cite the statutory provisions which were allegedly violated, confusingly citing only Labor Law § 651 (5), which simply sets forth the definition of "employee" for purposes of the article. But to the extent claimants have nominally asserted a state Labor Law claim, it will be separately considered for purposes of their cross-motions for late claim relief (see DeKenipp v State of New York, UID No. 2009-015-114 [Ct Cl, Jan. 26, 2009] [Collins, J.] [granting cross-motion for late claim relief as to state Human Rights Law cause of action, but not as to federal cause of action under the Age Discrimination in Employment Act, which was time-barred]).
Under the State's wage act provisions, an employee covered by the protections of the act has a private right of action for any underpayment, which must be commenced within six years (see Labor Law § 663 [3]). Notably, however, as defendant correctly points out, individuals who are employed by "a federal, state[,] or municipal government or political subdivision thereof" are excluded from the protections of the act (id. § 651 [5] [m]; see Matter of Faculty Student Assn. of State Univ. of Oneonta v Ross, 54 NY2d 460, 463 [1981]; Matter of Carver v State of New York, 87 AD3d 25, 29 [2d Dept 2011], affd 26 NY3d 272 [2015]). Thus, even assuming claimants had timely moved for late claim relief within six years of their latest accrual date,[FN9]
they have no viable cause of action thereunder—rendering any such claim wholly lacking in merit. Inasmuch as the appearance of merit is the most important factor in the Court's discretionary assessment of the propriety of late claim relief in any particular case, denial of claimants' cross-motions with respect to this purported cause of action is also warranted (see Calverley v State of New York, 187 AD3d 1426, 1427 [3d Dept 2020] ["it would be futile to permit the filing of a legally deficient claim which would be subject to immediate dismissal, even if the other factors tend to favor the granting of the request"] [internal quotation marks [*7]omitted]; see also Sands v State of New York, 49 AD3d 444, 444 [1st Dept 2008]; Swart v State of New York, 211 AD3d 881, 883 [2d Dept 2022]).
Ryan's cross-motion for late claim relief with respect to so much of his claim as is untimely is denied for the same reasons. As in the claims of Johnson and Simmes, Ryan's claim contains no allegations of FLSA violations occurring within the three years before his cross-motion for late claim relief was filed on April 19, 2024.
Based on the foregoing, it is hereby
ORDERED that defendant's motions to dismiss the claims of Christoper Johnson (M-99265) and William Simmes (M-99264) are GRANTED, and Claim Nos. 135537 and 135539 are DISMISSED in their entirety; it is further
ORDERED that defendant's motion to dismiss the claim of James Ryan (M-99263) is DENIED; and it is further
ORDERED that the cross-motions of Christoper Johnson (CM-100777), William Simmes (CM-100776), and James Ryan (CM-100775), for leave to file late claims are DENIED.
July 11, 2025Albany, New YorkZAINAB A. CHAUDHRYJudge of the Court of Claims
Papers Considered:
Claim No. 135537 (Christopher Johnson)1. Claim No. 135537, filed October 29, 2020;2. Amended Answer, filed December 16, 2020;3. Notice of Motion (M-99265), and supporting papers and exhibits, filed March 29, 2023;4. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Motion to Dismiss Claim, and exhibit, filed April 19, 2024;5. Memorandum of Law in Opposition to Defendant's Motion to Dismiss Claim, filed April 20, 2024;6. Notice of Cross-Motion (CM-100777), and supporting papers and exhibits, filed April 19, 2024;7. Affirmation of Assistant Attorney General C. Harris Dague, in Opposition to Claimant's Cross-Motion for Leave to Late File and in Reply in Further Support of Defendant's Motion to Dismiss, filed May 24, 2024;8. Affirmation of Melanie Lazarus, Esq., in Support of Claimant's Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024; and9. Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024.
Claim No. 135539 (William Simmes)1. Claim No. 135539, filed October 29, 2020;2. Amended Answer, filed December 16, 2020;3. Notice of Motion (M-99264), and supporting papers and exhibits, filed March 29, 2023;4. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Motion to Dismiss Claim, [*8]and exhibit, filed April 19, 2024;5. Memorandum of Law in Opposition to Defendant's Motion to Dismiss Claim, filed April 20, 2024;6. Notice of Cross-Motion (CM-100776), and supporting papers and exhibits, filed April 19, 2024;7. Affirmation of Assistant Attorney General C. Harris Dague, in Opposition to Claimant's Cross-Motion for Leave to Late File and in Reply in Further Support of Defendant's Motion to Dismiss, filed May 24, 2024;8. Affirmation of Melanie Lazarus, Esq., in Support of Claimant's Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024; and9. Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024.
Claim No. 135621 (James Ryan)1. Claim No. 135621, filed November 13, 2020;2. Answer, filed December 16, 2020;3. Notice of Motion (M-99263), and supporting papers and exhibits, filed March 29, 2023;4. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Motion to Dismiss Claim, and exhibit, filed April 19, 2024;5. Memorandum of Law in Opposition to Defendant's Motion to Dismiss Claim, filed April 20, 2024;6. Notice of Cross-Motion (CM-100775), and supporting papers and exhibits, filed April 19, 2024;7. Affirmation of Assistant Attorney General C. Harris Dague, in Opposition to Claimant's Cross-Motion for Leave to Late File and in Reply in Further Support of Defendant's Motion to Dismiss, filed May 24, 2024;8. Affirmation of Melanie Lazarus, Esq., in Support of Claimant's Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024;9. Memorandum of Law in Reply and Further Support of Claimant's Cross-Motion for Permission to File a Late Claim, filed June 7, 2024;10. Supplemental Affirmation of Assistant Attorney General C. Harris Dague, in Support of Motion to Dismiss, filed March 12, 2025;11. Affirmation of Renée Behrens, and supporting exhibits, filed March 12, 2025; and12. Supplemental Brief Regarding the Timeliness of Claimant Ryan's Claims as Requested by the Court, filed March 12, 2025.

Footnotes

Footnote 1:The captions in the claims of Johnson (No. 135537) and Simmes (No. 135539) have been amended sua sponte to reflect the only properly named defendant.

Footnote 2:Under the FLSA, an employer must pay employees time and a half for any hours worked beyond 40 hours per week (see 29 USC § 207 [a] [1]). The New York Labor Law similarly requires such overtime compensation (see 12 NYCRR 142-2.2; Jule v Kiamesha Shores Prop. Owners Assn. Inc., 210 AD3d 1330, 1332-1333 & n 2 [3d Dept 2022], appeal & lv dismissed 39 NY3d 1124 [2023]).

Footnote 3:Contrary to claimants' assertion that defendant's motions should technically be considered motions for summary judgment, defendant's motions are properly made under CPLR 3211 (e). Among other things, that provision permits motions to dismiss on the ground of lack of subject matter jurisdiction to be made at any time, even after answering (see CPLR 3211 [e]; Carpenter v Plattsburgh Wholesale Homes, Inc., 83 AD3d 1175, 1177 n 1 [3d Dept 2011]; see also Financial Indus. Regulatory Auth., Inc. v Fiero, 10 NY3d 12, 17 [2008] [holding that lack of subject matter jurisdiction defense may be raised at any time in the litigation]).

Footnote 4:The affirmative defense of untimeliness was raised with particularity in defendant's answer in each claim, as required (see CCA § 11 [c]).

Footnote 5:In opposition to claimants' application for late claim relief, as well as in a response to the supplemental briefing requested by the Court on the application of the Covid-19 toll, defendant belatedly takes a more definitive stance regarding the accrual date for Ryan's claim, arguing that his retirement date is the latest possible accrual date because he was not entitled to any wages or overtime compensation under the FLSA after his separation from state service. Although this argument is not being considered for purposes of determining defendant's motion to dismiss, the Court is not holding that Ryan remained an employee for purposes of the FLSA after his retirement as a matter of law. Thus, defendant is not precluded from making such an argument, supported by the appropriate admissible evidence, at a later stage in the litigation.

Footnote 6:Although the determination of employment status under the FLSA "is ultimately one of law, '[i]n entertaining and assessing the evidence with respect to [the necessary multi-factor test], the court [would be], in effect, [called upon to] conduct[ ] a miniature bench trial' " (Roberts, 225 F Supp 3d at 1411, quoting Martinez-Mendoza v Champion Intl. Corp., 340 F3d 1200, 1209 n 27 [11th Cir 2003]).

Footnote 7:The parties were asked to brief the following: "Whether, factoring in the Covid-19 toll, any portion of Ryan's claim was commenced within the six-month limitations period prescribed under Court of Claims Act § 10 (4) (see Bergmann v State, 281 AD2d 731 [3d Dept 2001]; see also Alston v State, 97 NY2d 159 [2001])."

Footnote 8:The 242-day period would have ended on Saturday, July 3, 2021, but given the observance of the July 4th holiday that year on Monday, July 5, 2021, Simmes would have had until Tuesday, July 6, 2021 to bring his motion (see General Construction Law § 25-a).

Footnote 9:With the benefit of the Covid-19 toll, it appears that Simmes' cross-motion would have been timely with respect to this purported cause of action since it was made before July 2, 2024. But Johnson's time to make such a motion would have expired on February 2, 2024.